## WILCOXON v. OSBORN et al., Appellants.

1. **Deed**: CERTIFICATE OF ACKNOWLEDGMENT. A certificate of acknowledgment of a deed, which shows that the acknowledgment was made by the grantor, but omits to name him, is not void for the omission.

2. **Swamp Lands, Conveyance of.** Even if it be true that under the laws in relation to swamp lands, as they stood in 1860, the Governor and not the county commissioner, was the proper officer to execute deeds to such lands, yet when the commissioner executed a deed, if the county received the purchase money, the equitable title vested in the purchaser, and the curative act of 1868, (Acts 1868, p. 67,) passed the legal title to him.

3. **Estoppel, as between Grantor and Grantee.** The rule is well established that the grantee is not estopped to·deny the grantor's title, but this rule is not applicable to a case in which the only title asserted by the grantee is the precise title he has acquired from the grantor, nor to a case in which both parties claim from a common source and the title is identical in that source.

   A county having received the purchase money for a tract of swamp land, caused a deed to be made to the purchaser by the county commissioner. On the same day the county made a loan of school funds, taking as security a mortgage on the land. Subsequently the county caused the mortgage to be foreclosed. The defendant in this case derived title through this foreclosure. *Held*, that, as against the heirs of the original purchaser, the defendant was estopped to deny the validity of the commissioner's deed.

| | |
| --- | --- |
| 77 | 621 |
| 97 | 365 |
| 97 | 536 |
| 77 | 621 |
| 103 | 657 |
| 104 | 149 |
| 105 | 101 |
| 77 | 621 |
| 52a | 481 |
| 77 | 621 |
| 113 | 98 |
| 117 | 517 |
| 77 | 621 |
| f138 | 292 |
| 77 | 621 |
| 173 | ²452 |

4.  **Administrator's Deed.** In pursuance of an order of the probate court made February 10th, 1861, an administrator, in April, 1861, sold real estate, and immediately executed and delivered a conveyance,, and made out a report of sale; but the report was never presented to the court until July, 1862, at which time an order was made approving the sale as of the April term, 1861, and on the same day the administrator's letters were revoked. *Held*, that while the proceedings were irregular, the irregularity was not such as to invalidate the deed.

5.  **Sheriff's Sale.** A sale by the sheriff under a school mortgage made in vacation of the circuit court, is void, both in direct and collateral proceedings.

6.  **Adverse Possession.** Notwithstanding the paper title of opposing parties may be derived from a common grantor, either may assert against the other an independent title by possession.

7.  **Mortgages.** A sale under defective foreclosure proceedings, although it may not carry the legal title to the land, will operate as a transfer of the equitable title to the mortgage.

*Appeal from Nodaway Circuit Court.*—HON. H. S. KELLEY, Judge.

AFFIRMED.

*Johnston & Jackson* for appellants.

*John Edwards* for respondents.

MARTIN, C.—This was a suit in equity, commenced on the 23rd day of May, 1877, for the purpose of enforcing the right of redemption to a parcel of land in Nodaway county, containing eighty acres. The plaintiffs obtained possession a few months before the suit. The defendant, Lewis Osborn, denied the plaintiffs' title and set up a title in himself, starting from a source common with the plaintiffs' source of title. He also claimed the absolute title by virtue of an occupation and possession for a sufficient length of time to bar the plaintiffs' claim of title and vest himself with the fee. The other defendants admitted the allegations of their petition and joined with the plaintiffs in their prayer for relief.

At the trial the plaintiffs put in evidence the record title of both sides. I will briefly notice these chains of title relied on by the parties, respectively. The chain of title is as follows: A patent from the State of Missouri to Nodaway county, conveying certain swamp lands including the parcel in dispute, dated June 26th, 1869, made in pursuance of the act of the legislature of March 10th, 1869; next a deed from Nodaway county, by its commissioner, to Isaiah Wilcoxon and Mark Murphy, dated June 4th, 1860, recorded November 28th, 1860, the name of the grantor being left out of the certificate of acknowledgment; this deed purports to have been made in fulfillment of a contract of purchase given to Chas. B. Lee, February 21st, 1856, by the county, which contract, or certificate, had been assigned to Wilcoxon and Murphy; next, a mortgage deed of said Wilcoxon and Murphy to Nodaway county, dated June 4th, 1860, securing a loan of $100 from the school fund, this mortgage providing for sale by the sheriff in the default of payment of principal or interest of the loan; next, a warranty deed by Mark Murphy and wife to George H. Wilcoxon, dated April 6th, 1861; and conveying an undivided half of the land; next a deed by Isaiah Wilcoxon's administrator to George H. Wilcoxon, dated April, 1861, and acknowledged and recorded on the 6th and 9th of April, 1861. By virtue of these deeds it is claimed that the title to the land vested in George H. Wilcoxon, subject to the mortgage to the county to secure the $100 borrowed from the school fund, June 4th, 1860. He died intestate on the 8th day of April, 1863, and left seven children, all minors, four of whom are plaintiffs, viz: Sallie, Marion, Josephine and John, and three are defendants, viz: Amanda, Anna and Alfred.

The adverse title, under which the defendant, Osborn, claims the land, forks out from the plaintiffs' chain of title through the mortgage of June 4th, 1860, given to secure the loan from the school fund, and runs as follows: 1st, The sheriff's deed to Nodaway county, acknowledged Au-

gust 16th, 1865, reciting the mortgage of June 4th, 1860, an order of the county on the sheriff to sell on account of a default in the mortgage, and a sale to said county on the 14th day of August, 1865, at public vendue, for $17; next, a deed by said county, through its commissioner, to Nathan Paton, acknowledged and recorded August 17th, 1865; next, a deed of said Paton and wife to Richard Boatman of the 8th day of October, 1866; next, a deed from said Boatman to Jacob Roth of the 12th day of October, 1868; next, a deed of said Roth to Lewis Osborn, defendant, of the 4th day of March, 1870.

From other testimony introduced, it appears that after the death of George N. Wilcoxon, in 1863, who had resided on the land with the plaintiffs, who were his children, his widow sold her dower right in the land and improvements, which consisted of three cabins and a mill, to Edward Spencer, and removed with the children to Iowa, thence to Southwest Missouri, and afterward to Kansas; that the children first heard of their interest in the land in 1876 from a person who came to them in Kansas for a quit-claim deed; that they returned with their mother, and finding the land unoccupied and the improvements all taken off, put up a tent on it, and entered into peaceable possession of it in January, 1877, which possession they continued to hold, having since their entry built a log cabin on it for their residence.

As to the possessory title of defendant, it seems that after the deed of the county to Paton of August 17th, 1865, the land was possessed and occupied first by him, then by Boatman, his vendee, under deed of October 8th, 1866, then by Jacob Roth, his vendee, under deed of October 12th, 1868, who occupied it as proprietor until his sale to his brother-in-law, Lewis Osborn, March 4th, 1870. Osborn is a non-resident, and Roth continued in possession for him till 1876, when he removed the fence which constituted the only improvement left on the place at that time. After

that time the place seems to have remained vacant until the entry of the plaintiffs in January, 1877.

On this evidence the court, on the 29th day of January, 1878, rendered a decree in favor of the plaintiffs, and the defendant, Alfred Wilcoxon, permitting them to redeem under the mortgage of June 4th, 1860, mentioned in the petition, five-sevenths of the land, by payment to defendant Osborn of the sum of $330, being five-sevenths of the amount due on the mortgage and for taxes. Amanda and Anna, defendants, were held to be barred by the statute of limitation. The defendant Osborn has, for himself, prosecuted this appeal.

I. The defendant insists, in his brief, that the only right the ancestor of the plaintiffs ever had in the land was a right to purchase in pursuance of the certificate of purchase of February 21st, 1856, which Wilcoxon and Murphy acquired from Charles B. Lee. It is denied in the answer that Wilcoxon and Murphy borrowed $100 from the school fund to complete the purchase, or that the bond and mortgage given by them on the 4th day of June, 1860, were given to secure a loan of that amount of the school fund. On the contrary, it is averred that the mortgage of June 4th, 1860, was in truth given by them to secure the purchase money for the land called for in the certificate of purchase, and that said purchase money has never been paid, and that the plaintiffs and their ancestor abandoned the right to a deed under said certificate, and have lost all right to have a deed from the county in pursuance thereof.

This position cannot be maintained in face of the evidence disclosing the character of the transaction with the county. The evidence goes to show that the certificate was surrendered as paid, and that the mortgage was to secure a loan from the school fund. The mortgage recites the language of the bond it was given to secure, and that language declares it was given to secure a debt payable to the use of the school fund. This recital, which is binding on the county, sustains the position of the plaintiffs that

40—77

enough was borrowed from the school fund to pay for the land, and that the mortgage was given to secure the loan, and not the purchase money. This suit is brought to redeem the land from this mortgage, and not to pay the purchase money and complete the purchase. The plaintiffs clearly have no right of purchase. If they have anything at all it must be an estate in the land.

II. I will first consider the record title and estate of plaintiffs. The defendant assails two deeds in the plaintiffs' chain of title, viz: the deed of the county by Commissioner Bickett to Wilcoxon and Murphy of June 4th, 1860, made under the swamp land act, and purporting to convey the whole title, and the deed of Isaiah Wilcoxon's administrator to George H. Wilcoxon, of April, 1861, for an undivided half of the land.

In respect to the first mentioned deed, it is claimed that the acknowledgment of the commissioner is defective, 1. DEED: certificate because he is not mentioned by name in the of acknowledg-ment. certificate of acknowledgment. The clerk certifies that "personally appeared ———, who is personally known to me to be the same person whose name is subscribed to the within and foregoing conveyance as having executed the same as party thereto, and in the capacity therein set forth, and acknowledged the same to be his act and deed for the purposes therein mentioned. In testimony whereof," etc. His name as grantor of the deed is subscribed to it, and appears in the body of the deed. A certificate must be construed with reference to the deed it is attached to, and the deed is always allowed to help out the construction of the certificate. Martindale on Conveyances, § 259; *Samuels v. Shelton*, 48 Mo. 444; *McClure v. McClurg*, 53 Mo. 173; *Carpenter v. Dexter*, 8 Wall. 515; *Chandler v. Spear*, 22 Vt. 388; *Wells v. Atkinson*, 24 Minn. 161; *Sharpe v. Orme*, 61 Ala. 263; *Middleton v. Findla*, 25 Cal. 80. The material requisite of an acknowledgment is complied with, when it appears from the certificate, that the grantor of the deed appeared before the officer and ac-

knowledged it to be his act and deed. I think it sufficiently appears from this certificate that it was the grantor and no one else who appeared and acknowledged it. Under the strict ruling in *Lincoln v. Thompson*, 75 Mo. 613, this certificate would be good. In that case one name was subscribed to the deed, and another one mentioned in the certificate, so that an apparent contradiction was presented on the face of the instrument. In this case no such contradiction appears. The certificate does not formally recite the name of the person making the acknowledgment, but declares that it was the grantor, and that, I am satisfied, is sufficient.

III. The deed of the county, of June 4th, 1860, by its commissioner, is objected to by the defendant on the ground that the county could not, by commissioner or otherwise, sell any swamp land without payment of the purchase money. The deed recites that the purchase money has been paid; and this recital is sustained by the evidence in the case showing that the money to pay for the land was borrowed from the school fund.

It is objected that under the swamp land acts, the Governor, and not the commissioner, was the proper person to make the deed after payment of the purchase money. I am inclined to the view that the receipt of the purchase money by the county, and delivery through its authorized agent of a memorandum of sale, operates to vest the equitable title in the purchaser as it would between any two citizens. Perhaps the Governor was the proper party to make the deed, but it certainly ought to follow the actual purchase. The curative act of 1868, (Sess. Acts 1868, p. 67,) was intended to cure these defects and add the legal to the equitable right of the purchaser; and it was held to effect this in the case of *Barton Co. v. Walser*, 47 Mo. 189; and I perceive no good reason why that case should not apply to the deed in question, if it is defective in the manner mentioned.

But I apprehend it is not necessary in this case to con-

sume time in attempting to explain or reconcile the many acts of our legislature relating to swamp lands. This is not an action of ejectment in which the plaintiffs must maintain their right of possession by a paramount title. They are already in possession. They describe a certain swamp land title, originating in a certain way and claimed under certain conveyances by opposing parties, and they seek to enforce against the opposing claimants their right of redemption, which shall return that title and no other to them.

Now it seems to me the defendant is not in a position to maintain that Wilcoxon and Murphy were not owners 3. ESTOPPEL, AS BE- of the county's title on the 4th day of June, TWEEN GRANTOR AND GRANTEE. 1860, when the mortgage was made. . That mortgage was made on the same day the county assumed to convey the land to them. The disputed deed made to them on that day was delivered after receipt of the money from them, and after they had surrendered their certificate of purchase. The county, in taking the mortgage for the school fund at that time, necessarily knew that it was made on the faith of the deed to them of the same date. The two deeds are parts of the same transaction. To allow the county under these circumstances to deny the title of its mortgageors, which it had assumed to confer on them, and for which it had received the purchase money, would work an injustice against them. It would also be author- izing the county to adopt the beneficial part of a transac- tion and repudiate that which included a reasonable liability, against conscience and equity. *Austin v. Loring*, 63 Mo. 19. Besides, it is in evidence that after accepting the mortgage, the county never claimed any title to the land except by virtue of the mortgage and proceedings to foreclose under it.

I am well aware that our Supreme Court has, by re- peated decisions, laid down the doctrine that the relation of vendor and vendee is antagonistic, and that the vendee is not estopped from denying the vendor's title. *Macklot*

*v. Dubreuil*, 9 Mo. 473 ; *Landes v. Perkins*, 12 Mo. 238 ; *Blair v. Smith*, 16 Mo. 273 ; *Cutter v. Waddingham*, 33 Mo. 269 ; *Mattison v. Ausmuss*, 50 Mo. 551. It will be found 'on examination of these cases that they are to the effect that an estoppel cannot be invoked against the right of the grantee to set up an outstanding or after-acquired title or a title under the statute of limitation, by which to fortify his position. But this rule is not applicable to a case in which the only title asserted or claimed by the grantee is the precise title he has acquired from the grantor. Bigelow on Estop., (2 Ed.) 335. Neither has it been applied to a case in which both parties claim from a common source, and the title is identical in that source. Bigelow on Estop., (2 Ed.) 335, 336 ; *Brown v. Brown*, 45 Mo. 412.

Such is the present case. The plaintiffs claim the title of Wilcoxon and Murphy subject to their mortgage. The defendant claims the same title by and through a foreclosure of that mortgage. The county assumed to foreclose the mortgage by proceedings in the county court culminating in a sheriff's deed to the county in August, 1865, in which the mortgage deed is recited and its validity recognized. The sale to the county was on the 14th day of August, 1865, and the sheriff's deed was acknowledged on the 16th day of August, 1865. On the same day the county court enters an order empowering Leander P. Ellis, president of the court, to convey the land by deed to Nathan Paton in consideration of $109, paid by him into the treasury. The president makes his deed to Paton on the 17th day of August, 1865, which is recorded on the same day. Paton afterward, in 1866, conveys to Boatman, and the title thus passes down to Osborn. The proximity in time of these conveyances is a significant fact bearing upon the character of defendant's title and of his claim of right under it. *Fontaine v. Boatman's Saving Institution*, 57 Mo. 552.

It is true the defendant now seeks to escape the effect of these deeds by claiming that the title of Paton from the county has no connection with the sale under the mort-

gage. In his answer, he pretends that the county conveyed to Paton after the plaintiffs had abandoned their alleged right of purchase. But this is contrary to the truth of the case. The plaintiffs had no right of purchase; and the county did not convey to Paton until it assumed to have a new title under the mortgage. The execution and regularity of the mortgage is admitted by defendant in his answer, and the county, before conveying to Paton, entered of record an order recognizing its validity and ordering a sale under it. The mortgage was never abandoned or surrendered by the court, but was kept alive by order of the county court for the purpose of foreclosure.

The fact that the proceedings in foreclosure may have been irregular, cannot affect the conclusion that the validity of the mortgage was recognized by the county, and that its subsequent claim of title emanated from it, when it assumed to buy at the foreclosure sale, and in a few days afterward assumed to convey to Paton. Indeed, the only title which the deed to Paton could have been effectual to convey, must have been the title acquired at the foreclosure sale. When swamp land is once legally disposed of by the county, and is purchased back again by the county in foreclosing a mortgage for a school debt, it is no longer swamp land thereafter, but is held like any other real estate acquired in that way. The county has the right to dispose of it as the county attempted in 1865 to dispose of this land to Paton, by the deed of the president of the county court, in compliance with the Revised Statutes of 1855. R. S. 1855, p. 502, § 2.

If the deed of the county commissioner in 1860 failed to convey this land to Wilcoxon and Murphy, it is true the land in that event, would remain in the county as swamp land subject to the swamp land acts. And this is the position of the defendant. But in this view of the matter, the deed to Paton could not effect a conveyance of the title, it being for swamp land, and at that time subject to the act of 1857, applying to Nodaway county, which required all

sales of swamp lands to be made in public at the court-house after sixty days' notice. Sess. Acts 1857, p. 387. The curative act of 1868 could not help the sale to Paton without curing the sale to Wilcoxon and Murphy, and making that a better one, because first in time.

For these reasons I think the county and those claiming the same title from the county, are estopped in equity from maintaining that the county, at the time it was foreclosing the mortgage it held for the school moneys, was already possessed of the identical title upon the faith of which the mortgage was given.

IV.   It is objected that the deed of Isaiah Wilcoxon's administrator of 1861, is void for irregularity.   This is an 4. ADMINISTRA- objection to a link in the plaintiffs' chain of TOR'S SALE.   title below the common source of title, and if it is well taken the plaintiffs will have to give up one-half of their recovery.   One-half of their title is derived from Murphy and one-half from Isaiah Wilcoxon's administrator.   It is urged by defendant that the report of the administrator's sale was never properly approved.   It seems that the sale was regularly made by Edward Spencer, the administrator, in pursuance of an order of court of the 10th day of February, 1861.   In April, 1861, the sale was effected, and the report made out, but it was not submitted to the court till July 14th, 1862.   On that day an order was made approving the sale as of the April term, 1861.   On the same day the letters of administration of Edward Spencer were revoked by order of the court, and a successor appointed.   The approval of his report and revocation of his letters were contemporaneous acts.   At the time of the approval, the court had jurisdiction of the administration and of the administrator.   The deed had been made by Spencer at the time of the sale, long before revocation of his letters.   No final settlement had been made.   I think this sale is clearly within the cases upholding judicial sales, notwithstanding minor irregularities. *McVey v. McVey*, 51 Mo. 406; *Rugle v. Webster*, 55 Mo. 246;

*Jones v. Manly*, 58 Mo. 559; *Garner v. Tucker*, 61 Mo. 427; *Long v. Joplin M. & S. Co.*, 68 Mo. 422.

V. Having disposed of the objections of defendant to the plaintiffs' chain of title, I will consider the objec-

5. SHERIFF'S SALE. tions of the plaintiffs to the defendant's deeds.

If the foreclosure of the mortgage of Wilcoxon and Murphy was in compliance with law, then the plaintiffs' title went back to the county, and by virtue of subsequent conveyances it vested in the defendant Osborn. It seems from the evidence in the case that the sale ordered by the county court was made by the sheriff on the 16th day of August, 1865, during the session of the county court, but not during a session of the circuit court. It was during vacation of the latter court. Such a sale is void in both direct and collateral proceedings. *McClurg v. Dollarhide*, 51 Mo. 347; *Merchants' Bank v. Evans*, 51 Mo. 335; *Bruce v. Leary*, 55 Mo. 431. This deprives the defendant of the only title which the county ever undertook to convey to defendant or his grantor. It never undertook to convey to Paton the original swamp land title possessed by it, but only the title supposed to have been acquired at the sheriff's sale. The county, and all parties privy with it, were estopped from denying that Wilcoxon and Murphy owned the original swamp land title in 1860.

VI. The defendant is not estopped from setting up an independent title derived from possession. The adverse

6. ADVERSE POSSES- possession of the land by him, and those
SION.                under whom he claims, from 1865 to 1876,
would give him absolute title as to all persons, except such as are under the disability of coverture or minority. Such a length of time would also bar the claim of the plaintiffs for redemption of their title or any other title to the land. It seems clear from the evidence that the five parties in this case to whom the court adjudged the right of redemption, are not barred, the running of the statute having

been arrested by their minority, so as not to leave ten years' adverse holding by defendant or his grantors.

While the sale under the mortgage failed to carry the legal title of the land, it operated to vest the equitable title 7. MORTGAGES. to the mortgage in the purchaser, and the court acted properly in giving the defendant the benefit of the mortgage in the decree of redemption. *Honaker v. Shough*, 55 Mo. 472; *Jones v. Mack*, 53 Mo. 147; *Russell v. Whitely*, 59 Mo. 196.

The decree as made by the circuit court is accordingly affirmed. PHILIPS, C., concurs; WINSLOW, C., absent.