STURGEON et al., Appellants, v. HAMPTON.

1. **Swamp Lands :** POWER OF COUNTIES OVER : STATUTE. The amendatory act of the general assembly of 1875 (Laws, p. 32), providing that all lands in this state selected under the act of congress donating swamp lands to the state "be and the same are hereby declared to vest in full title and belong to the counties in which they may lie," did not enlarge the powers of the county courts over the swamp lands. Notwithstanding said act, the counties still held them for the uses and with the power of disposition under the then existing laws.

2. ————. The swamp lands are not the general property of the counties.

Sturgeon v. Hampton.

3. **Swamp Lands, Sales of**: PATENT.  Under the laws (R. S. 1855, p. 1006, secs. 3–4) providing for the sale of swamp lands by sheriffs, under orders of the county courts, patents therefor were to be made by the governor, but not until full payment of the consideration therefor.

4. —— : —— : COMMISSIONER.  The county court did not have the power to appoint a commissioner to convey swamp lands, nor could it release a purchaser from the payment of the consideration.

5. —— : ——.  The swamp land laws provide when and how title thereto is to be made.  These statutes are exclusive, and the method thus prescribed must be pursued.

6. **County Courts, Powers of.**  The county courts are not the general agents of the counties or of the state.  Their powers are limited and defined by law, and when they exceed their statutory authority their acts are void.

7. —— : NOTICE.  Persons dealing with such agents are bound to take notice of their powers and authority.

8. —— : ESTOPPEL.  Counties are not estopped by the illegal and void acts of their limited statutory agents.

9. **Swamp Lands**: ACT OF MARCH 26, 1868.  The act of the legislature approved March 26, 1868 (Laws, p. 67) entitled "An act to perfect the title to lands known as swamp lands," was not intended to make valid a void sale or a deed when the purchaser was not entitled to one.

*Appeal from Chariton Circuit Court.*—HON. G. D. BURGESS, Judge.

AFFIRMED.

*Wm. W. Rucker, Andrew Mackay, Jr., G. R. Lockwood* and *Noble & Orrick* for appellants.

(1)   The act of congress of September 28, 1850, conveyed to the state of Missouri a fee-simple title to swamp and overflowed lands within its borders, subject to the conditions contained in said act, and for a breach of these conditions congress alone can annul the conveyance, or the United States enter.   Act of Congress, Sept. 28, 1850; U. S. Stat., vol. 9, p. 519; *Dunklin County v. Dunklin County Court*, 23 Mo. 456; *Campbell v. Wort-*

man et al., 58 Mo. 258; *Adams Co. v. Am. Emigrant Co.*, 100 U. S. 61. And under this act no patent was necessary to convey the legal title to the state of Missouri. Washburn's Real Property (4 Ed.) vol. 3, secs. 29–32, pp. 230, 231; *Grignon v. Astor*, 2 How. 319; *Chouteau v. Eckhart*, 2 How. 344. And a grant by the government, state or federal, cannot be impeached collaterally in an ejectment suit. Washburn's Real Property (4 Ed.) vol. 3, sec. 35, p. 193. (2) The state of Missouri could and did, prior to 1860, convey to Chariton county the fee-simple title to swamp and overflowed lands within the borders of said county, and Chariton county had the right to convey said lands to the C. & R. R. R. Co., the N. Mo. R. R. Co., and the plaintiffs herein (appellants) in manner and form and for the consideration for which they were conveyed. *Adams Co. v. Am. Emigrant Co.*, 100 U. S. 61; Sess. Acts 1861, p. 394; Sess. Acts 1850–1, p. 238; Sess. Acts 1854–5, p. 160: Sess. Acts 1854–5, p. 349; Sess. Acts 1857, p. 32; Sess. Acts 1857, p. 275; R. S. Mo. 1855, sec. 2, p. 502; R. S. Mo. 1855, sec. 17, p. 535; *Hannibal & St. Jo. Ry. v. Marion Co.*, 36 Mo. 275; *Reardon v. St. Louis Co.*, 36 Mo. 555; *In re Saline Co.*, 45 Mo. 52; *Page Co. v. Am. Emigrant Co.*, 41 Iowa, 115; *Audubon Co. v. Am. Emigrant Co.*, 40 Iowa, 460; *Allen v. Cerro Gordo Co.*, 34 Iowa, 54; *Emigrant Co. v. Wright Co.*, 97 U. S. S. 339; Cooley on Const. Limit. 240; *Linville v. Bohanan*, 60 Mo. 554; *Mitchell v. Nodaway Co.*, 80 Mo. 257. And the C. & R. Railroad Company had authority to convey the land in question to the North Missouri Railroad Company and receive subscriptions payable in land from the county; and the North Missouri Railroad Company was authorized to receive and convey said lands to Ann C. Sturgeon. Sess. Acts 1851, 483; Sess. Acts 1859–60, 208. (3) Until the act of 1863, sec. 7, p. 31, the county court of Chariton county was not forbidden to sell swamp lands for less than $1.25 per acre. R.

S. Mo. 1865, 281; Sess. Acts 1863, sec. 7, p. 31; R. S. Mo. 1855, 502; acts cited under point two. (4) The fee-simple to the lands in controversy having been granted to Chariton county, it was not competent for the state by subsequent legislation to fix a minimum price at which the county could sell. 3. Washburn's Real Property, (4 Ed.) sec. 29, p. 191. (5) That the sheriff of Chariton county made the sale of the land in controversy on the tenth of May, 1860, is shown by a preponderance of evidence, to-wit: The numerous orders of the county court, setting forth such sale, and the deeds executed by its agents wherein such sale is declared to have been made. (6) But at this time (1860) a sale by the sheriff was not required. Acts above cited; R. S. Mo. 1855, 502. (7) And even if such sale were necessary, the county of Chariton, and this defendant, who must be held to have notice of the fact that such sale was declared by the county court, as above stated, to have been made, are estopped from denying that such sale was made, the plaintiffs' having relied upon these orders and deeds. *Phelps v. Kellogg*, 15 Ill. 131; *Audubon Co. v. Am. Emigrant Co.*, 40 Iowa, 460; *Durette v. Briggs*, 47 Mo. 356. (8) The act of March 26, 1868, cured any irregularities in the sale of the land in 1860, 1865 and 1866. *Barton Co. v. Walser*, 47 Mo. 189; Sess. Acts 1868, 67; Dillon on Corporations, vol 1, (3 Ed.) 96, 104; *Bridgeport v. Ry. Co.*, 15 Conn. 475; *Wilcoxon v. Osborne*, 77 Mo. 621. (9) The plaintiffs' title to the swamp lands was not affected by the application of the proceeds of sale by the county court. *Dunklin Co. v. Dunklin County Court*, 23 Mo. 455; *Emigration Co. v. Wright Co.*, 97 U. S. 337; *Adams Co. v. Emigration Co.*, 100 U. S. 61; *Mills Co. v. Railroad Co.*, 107 U. S. 557, 566; *Hager v. Reclamation Dist. No. 108*, 111 U. S. 712.

*H. Lander* and *F. O. Smith* for respondent.

(1) The county could not subscribe to the stock of a railroad without a vote of the taxpayers thereon. 1 R. S. 1855, 427, 429; Acts 1859, p. 320; *Leavenworth v. Platte Co.*, 42 Mo. 171; *Stevens v. Franklin Co.*, 48 Mo. 167. (2) The grant of the swamp lands to the county placed the legal title in it in trust for school purposes. *State ex rel. v. New Madrid Co.*, 51 Mo. 85; *Veal v. Chariton Co.*, 15 Mo. 412; *Butler v. Chariton Co.*, 13 Mo. 112. And the trust could not be diverted by the trustee. Perry on Trusts, secs. 700, 733, 734; *Mudfield v. Morris*, 11 Kan. 151. (3) The trust being created by public acts, all persons are bound by it, even a purchaser for value. Hill on Trustees top p. 764; *Andrew Co. v. Craig*, 32 Mo. 531; 2 Sudg. on Vendors, 533. (4) In ordering the sale of swamp lands, the county courts do not act judicially, but ministerially, as agents of the county under the law. *In re Saline County Subscription*, 45 Mo. 51. County courts are not general agents of the county to do any and all things. They only have such powers as are granted, defined and limited by law, and like all other agents, they must pursue their authority and act within the scope of their powers. *St. Louis v. Alexander*, 23 Mo. 483; *Wolcott v. Lawrence Co.*, 26 Mo. 272; *Steines v. Franklin Co.*, 48 Mo. 167; *Valle v. Fleming*, 19 Mo. 454; *Reardon v. St. Louis Co.*, 36 Mo. 555; *State v. Shortridge*, 56 Mo. 126; *Bauer v. Franklin Co.*, 51 Mo. 205; *Saline Co. v. Wilson*, 61 Mo. 237. (5) And the county is only bound when its officers and agents act within the granted powers. *State v. Clark*, 41 Mo. 44; *Sheely v. Wiggs*, 32 Mo. 398; *Steines v. Franklin Co.*, 48 Mo. 167; *Wolcott v. Lawrence Co.*, 26 Mo. 272. All persons dealing with counties are bound to know that its officers act within their authority. *State v. State Bank*, 45 Mo. 529,

538; *State v. Clark*, 41 Mo. 44. A purchaser of swamp land is presumed to know, as a matter of public record, the agent's authority. *Dart v. Hercules*, 57 Ill. 446. Even a patent granted by the governor for swamp lands is worthless unless it be given pursuant to law. *Rember v. Wills*, 24 Mich. 15. (6) The county court had no power to appoint Hammond commissioner to make deed ; the governor alone could convey under the law, and no deed could be made until full payment of the purchase money. 2 R. S. 1855, p. 1006, sec. 4 ; *Andrew Co. v. Craig*, 32 Mo. 528, 531. (7) The order of the county court of May 10, 1860, directing the sheriff to sell on that day, to the Chariton & Randolph Railroad, twenty-two thousand and four hundred acres of swamp lands in a lump, in consideration that the company would "assume to pay by written obligation to said county " for the use of the school funds, three thousand dollars "annually forever," was without any authority of law and void. (8) The Cunningham deed and the one by Holcombe as commissioner were also void. An agent cannot ratify his own void acts. *State v. Bank*, 45 Mo. 542 ; *Commissioners, etc., v. Carter*, 2 Kan. 115. (9) The act of 1868 (Laws p. 67) was intended to cure defectively executed deeds and not irregular or void sales of swamp lands. *Barton Co. v. Walser*, 47 Mo. 189. (10) The county is not estopped by the unauthorized acts of its agents in the collection of taxes on the lands which were not taxable, and by the making and approval of illegal orders and deeds. These acts were all *ultra vires*. *St. Louis v. Gorman*, 29 Mo. 593 ; *Rossire v. Boston*, 4 Allen (Mass.) 57 ; *McFarland v. Kerr*, 10 Bosw. (N. Y.) 249 ; *Hutchinson v. Cassidy*, 46 Mo. 431, 434 ; *State v. State Bank*, 45 Mo. 528 ; *Walcott v. Lawrence Co.*, 26 Mo. 372. (11) There was no error in allowing the parol evidence of ex-sheriff Crawley and his brother, stating that no sale or report of sale was ever made by the sheriff or any one authorized by him

under the order of the tenth of May, 1860. *Hutchinson v. Cassidy*, 46 Mo. 431, 433-4.

BLACK, J.—This is an action of ejectment. Both parties claim title from Chariton county. The section of land in dispute is a part of the swamp lands of that county. The plaintiff's title is as follows :

1.　On tenth May, 1860, the county court of that county made an order directing the sheriff to sell on the same day twenty-two thousand and four hundred acres of swamp land to the Chariton & Randolph Railroad Company, in consideration that the company assumed to pay to the county for the school fund three thousand dollars annually forever. On the same day the court made another order, reciting a sale made by the sheriff and report thereof, all of which was approved. The clerk was directed to certify to the governor that the consideration had been discharged and that he issue patents to the company. The governor declined to issue any patents. On July 2, 1860, the court appointed Hammond a commissioner to make a deed to the company, which he did, including therein the land in question. This deed recited a consideration of three thousand dollars, payable annually forever, to the school fund.

2.　On November 6, 1862, the court made an order discharging the company from the payment of the three thousand dollars annually, provided it would construct its road within one-half mile of Keytesville, and locate a depot at that place ; and on April 5, 1865, the court directed Cunningham, the presiding justice, to make a quit claim deed to the North Missouri Railroad Company for some thirteen thousand acres, that company having acquired a conveyance thereto from the Chariton & Randolph Railroad Company, which deed he made on the same day, reciting a consideration of one hundred dollars. This deed also includes the land in question.

3.　On eighth of February, 1866, the court made an

order setting aside the order of sixth of November, 1862, as to the location of the road and depot, and fixed upon another location near Keytesville. This order then re-cites the Hammond deed, an agreement of the Chariton & Randolph Railroad Company to sell the land to the North Missouri Railroad Company, and in order to se-cure the same to that company and for the consideration of one thousand dollars of paid up stock in the west branch of the North Missouri Railroad Company, and upon the condition that the branch road should be built and a depot located at the place last designated, Hol-combe is appointed a commissioner to convey the land by quit claim deed to the North Missouri Railroad Com-pany, which deed he made.

4.   On eleventh of May, 1866, the court made another order accepting the one thousand dollars of paid up stock in the branch road as a full consideration to be paid by the North Missouri Railroad Company for these swamp lands, and discharged that company from the payment of any other or further sum, and directed its clerk to join with the company in the execution of deeds to purchasers ; and on December 9, 1867, the clerk and the company executed a deed to the land in question to plaintiff.

The branch road and depot were built at the desig-nated place. Defendant purchased and paid for the land in question under the provisions of law relating to sale of swamp land in 1880 and took possession there-under.   The act of congress of September 28, 1850, vested the title to the swamp lands thereafter to be selected in the state, primarily for the purpose of reclaiming them. The trust, it is held, is a personal trust reposed in the state, and does not follow the land. 23 Mo. 456 ; 100 U. S. 61.   So that we are here only concerned with the state statutes.

By the first section of the act of 1851, as amended and contained in Revised Statutes of 1855, the state donated

these lands to the counties in which they were situate, "for the purpose hereinafter designated." By subsequent sections the county courts are authorized to have them drained and reclaimed. An actual settler is given the right to pre-empt eighty acres and to pay for the same in two installments. The net proceeds of all the sales, after defraying the expenses of drainage, etc., are required to be paid into the county treasury and become a part of the school fund of the county. The amendatory act of 1857 (Acts 1857, p. 32) provides "that all lands in this state selected" under the act of congress, "be and the same are hereby declared to vest in full title and belong to the counties in which they may lie." This act was probably passed because of the fact that the lands were not selected and designated until long after the passage of the act of 1851. However that may be, there is nothing in the act which enlarges the powers of the county courts over them. The counties still held them for the uses and with power of disposition under the then existing laws. The lands are not the general property of the counties. It was so held in *State ex rel. Robbins v. New Madrid County Court*, 51 Mo. 84. Other sections of the swamp land law (R. S. 1855, 1006) having a more direct bearing upon the questions involved in this case are as follows :

"Section 3. Whenever in the judgment of said county courts it shall be to the interest of said counties so to do, they shall order the sheriff to sell the same, in such quantities at such times, and places, and on such terms as they may think proper, with or without draining and reclaiming the same, as in their discretion they may think most conducive to the interests of their respective counties.

"Section 4. Whenever full payment shall be made for any of said lands by the purchasers thereof, the county courts shall cause the same to be certified to the

governor, who shall thereupon grant to the purchaser, his heirs and assigns, a patent for the same," etc.

From these provisions of the law it is clear no deed or patent could be made until full payment of the consideration. The counties by force of these provisions held the title as a security for the payment of the purchase money. The patents were to be issued by the governor. The Hammond deed, made in 1860 was, therefore, made in plain violation of the law, for the consideration had not only not been paid, but no part of it was yet due. Besides this, the court had no power to appoint Hammond a commissioner, and when appointed he had no authority to make the deed. Reliance for authority so to do is placed upon section 2, page 502, Revised Statutes, 1855. That section does give to the county courts authority to appoint a commissioner to sell real estate belonging to the counties, and to execute deeds, but it has no application to the sale of these swamp lands. It relates to the general property of the counties. The swamp land laws provide when and how title thereto is to be made, and those statutes are exclusive, and the method there pointed out must be pursued. The special act of March 15, 1861, (Acts 1860-1, 394) gave to the county clerk of Chariton county power to make deeds to purchasers of the swamp lands, but that act, like the general law, gave him such power only "when the purchase money shall be fully paid off and satisfied, or the terms of the contract complied with." The terms of the sale, that is, three thousand dollars, payable annually forever, are certainly unusual, in view of the fact that no legal title could be made until full payment of the purchase price; still treating the terms of the sale as coming within the law, we do not see by what authority the county courts could release the railroad company from the payment of the consideration. The act of February 8, 1861 (Acts of 1860-1, 40) gave the county courts authority to cancel

contracts with persons for the purchase of these lands
when such persons had become unable to pay the pur-
chase price, but in such cases the land was to be re-sold
under the provisions of the swamp land laws.    That the
county court had no power to trade the obligation of the
company to pay three thousand dollars annually to the
school fund, for the agreement of the company to build
its road and locate a depot near Keytesville, is too clear
to call for argument.    The Cunningham deed, as an in-
dependent transaction, had no sheriff's sale to support it,
and so far as the orders of the county courts go, there
was no consideration whatever paid for the thirteen
thousand acres. As a deed, to confirm the Hammond deed,
it was subject to the same infirmities.    The Holcombe
deed and the deed of the county clerk were designed to
ratify the prior transaction by putting in a consideration
of one thousand dollars paid up stock in the branch
road. While authority was given by section thirty-three,
page   429,   Revised   Statutes,   1855,   to   counties   to
sell   their   swamp   lands   to   pay   subscriptions   for
stock   in   railroad   companies,   and   the   Chariton   &
Randolph   Railroad   Company   had   authority   to
receive land at an agreed valuation, in payment for its
capital stock (Acts 1859–60, 208), still it is agreed by
this record that the county never subscribed for stock in
either of these companies. By a special act (Acts of
1858–9, 320) Chariton county could not make such a sub-
scription without a majority vote of the taxpayers.    No
such vote was taken under that act or the general law.

1.    The county courts are not the general agents of
the counties or of the state.    Their powers are limited
and defined by law.    These statutes constitute their war-
rant of attorney.    Whenever they step outside of and
beyond this statutory authority their acts are void.    *Sa-
line County v. Wilson*, 61 Mo. 237 ; *Wolcott v. Lawrence
County*, 26 Mo. 275 ; *Steines v. Franklin County*, 48 Mo.
167.    Persons dealing with such agents are bound to

take notice of their powers and authority. *State v. Bank*, 45 Mo. 538; *Andrew County v. Craig*, 32 Mo. 531. We should go far to uphold their acts when merely irregular, but in this case the right to a deed for these lands must stand upon the order of the county court discharging the company from the payment of the agreed compensation to the school fund, and the consideration of one thousand dollars paid up stock. Both these acts were not simply irregularities, but they were without any warrant or authority in law and are void. These infirmities appear upon the face of the deeds and orders to which they make reference, and the purchaser from the company took with full notice.

2. Nor is the county estopped from disputing the validity of these deeds. These quasi public corporations are not estopped by the illegal and void acts of their limited statutory agents. The record shows that the land in question was assessed for taxes for the years 1870 to 1879, both inclusive. The taxes for 1870 were paid by plaintiffs, for the other years the taxes have not been paid. These facts do not constitute an estoppel. *City of St. Louis v. Gorman*, 29 Mo. 593.

3. These deeds must stand or fall upon the act of the legislature, approved March 26, 1868 (Laws, 67) entitled "An act to perfect the titles to lands known as swamp lands," which is as follows: "That all deeds or patents granted or made by the county courts of the state in which any of the lands known as swamp or overflowed lands may lie, shall be deemed and held to be valid and legal, whether issued by the county court or a commissioner appointed by said court for the purpose ; and such deed or patent shall vest in the purchaser of any such lands, all right, title or interest of said counties in said lands as fully as if said patents or deeds had been granted by the governor of the state, and countersigned by the secretary of state, as is now provided by general statutes ; and the funds arising from such sale shall con-

stitute a part of the school fund of the respective counties, as is now provided by law.''

This act was before the court for consideration in *Barton County v. Walser*, 37 Mo. 189. Then there were irregularities in the sales, and the deeds, certainly some of them were not executed by the proper officers. That the lands had been sold for fair prices, the terms of the sales complied with, and the purchase money paid into the county treasury, were uncontroverted facts. It was then held that the state had not divested itself of all control over the swamp lands ; that the counties did not stand in the attitude of individuals, and that these lands were held by them in subordination to the legislative will, and that the act was not within the constitutional prohibition against retrospective legislation. As to the act it is also said : ''It takes no property from the county, but says that the title to the land, which was sold and paid for under previous laws, shall vest in the purchasers. If there was any fraud or other infirmity attending the sale which would render it void, those questions are still open and not touched by this decision.'' We adhere to what is there decided. It was the purpose of this curative act to make valid those deeds executed by officers having no authority so to do, and to give them the force and effect of patents regularly issued by the governor. It was not the purpose of the act to make valid those sales made in violation of law and for purposes not contemplated by any statute. It contemplates sales from which funds may arise, for they are to constitute a part of the school fund. In short, it does not make valid a void sale, or make valid a deed when the purchaser is not entitled to one.

There never was a time in the history of these transactions when a deed could have been made to the railroad companies, or either of them, under any existing law. It follows from what has been said that the judg-

ment should be affirmed. It is so ordered. Sherwood, J., and Henry, C. J., dissent. The other judges concur.

HENRY, C. J., DISSENTING.—The act of congress of 1850 was a grant of the title of the swamp lands to the state, "subject to identification of the specific parcels coming within the description." *Martin v. Marks*, 97 U. S. 347; *Stephenson v. Stephenson*, 71 Mo. 127. While the grant was made to the state, with a view to the drainage and reclamation of the swamp lands, no trust was "fastened upon the lands, but a personal trust in the public faith of the state" was reposed. *Dunklin County v. Dunklin County Court*, 23 Mo. 456; *Emigrant Co. v. Adams County*, 100 U. S. 61. By the act of February 3, 1851, the state granted these lands to the several counties in which they were situate. That act was an honest attempt on the part of the general assembly to effectuate the purpose for which the lands were donated to the state. Throughout its provisions the main purpose of reclamation and draining of the lands is prominent. By the act of 1855, however, the several county courts were authorized "to sell and dispose of swamp and overflowed lands within their respective counties, whether with or without draining, or reclaiming the same, *as in their* discretion they may think most conducive to the interests of said county." This enlarged the power of the county courts over the swamp lands.

It might still have been contended, however, that, even under that act, the county court could sell them only for the purpose, and on the terms mentioned in the previous swamp land acts; but in 1857 the legislature passed an act, declaring, "That all lands in the state, selected under and by virtue of the act of congress of September 28, 1850, entitled, etc., be and the same are hereby declared to vest *in full title, and to belong to the counties in which they lie*"; and by the gen-

eral law then in force (sec. 2, p. 502 R. S. 1855), the county court was authorized to appoint a commissioner to sell and dispose of any real estate belonging to the county, and execute a deed, etc. This act was still in force when the Hammond and Holcombe deeds were executed. That it was within the power of the legislature to grant these lands to the county in fee-simple, stripped of all trusts, has been expressly held by the Supreme Court of the United States, in *Mills Co. v. Railroad Companies*, 107 U. S. 565, and, if the act of 1857 did not vest the title of these lands in the county of Chariton, it would be difficult to find language that would accomplish that object. If the act had that effect, it ends this controversy, for the county could sell the lands by a commissioner, under the general law. Sec. 2, p. 502, R. S. 1855. That the county court had no authority to release the railroad company from the consideration it agreed to pay for the lands, three thousand dollars annually forever, does not affect the question of title. The title passed by the commissioner's deed, and, if the county court had no authority to release the railroad company from its obligation, that obligation rests upon the company still. Nor does it matter that the contract between the county court and the railroad companies was fraudulent and corrupt. That cannot affect the title of an innocent purchaser, and no fraud is alleged in defendant's answer.

The following propositions are conceded: First, the act of congress of 1850 operated as a grant of the lands to the state, upon their selection, and did not impose a trust upon the land. Second, the state could, if it saw proper, grant the lands to the counties in which they lie, or to an individual, divested of all trusts; and the only question remaining, about which there is, or can be any controversy, is, did the act of 1857 so grant the lands to the counties in which they were situate? Satisfied that the answer to the last question must be af-

firmative, that the language of the act of 1857 is emphatic, unambiguous, and clearly passed the title to the land in controversy to Chariton county, to be held in fee-simple absolute, the same as if an individual instead of the county had been named therein as grantee, I cannot concur in the foregoing opinion. Judge Sherwood concurs with me.