CARRINGTON *v.* POTTER *et al.*

(*Circuit Court, E. D. Missouri, E. D.*    February 16, 1889.)

**1. EVIDENCE—DOCUMENTARY—PUBLIC RECORDS.**
   In the absence of statute authorizing entries in a book termed the "Record of the Register of Swamp Lands," relating to the disposition of such lands belonging to a county, certified copies of such entries are not admissible in evidence as public records.

**2. SAME—DEED—SEAL.**
   A certified copy of a deed is admissible, though it shows no seal opposite the grantor's signature, when the attestation clause recites that the deed was executed "under the hand and seal" of the grantor. Following *McCoy* v. *Cassidy,* 9 S. W. Rep. 926.

**3. PUBLIC LANDS—SWAMP LANDS—CONVEYANCE BY DEED OF COMMISSIONER.**
   Under Sess. Laws Mo. 1868, p. 67, declaring that deeds for county swamp lands, theretofore executed by commissioners, should be "deemed and held to

be valid and legal," and vest in the purchasers "all right, title, and interest of the counties in such lands, as fully as if * * * patents or deeds had been granted by the governor," who was the proper officer to execute deeds for such lands, such commissioner's deeds are, equally with a patent, *prima facie* evidence of a prior purchase in conformity with law, and a payment of the purchase price at the established rate.

At Law.

Ejectment by Charles S. Carrington against James M. Potter *et al.*

*W. H. Clopton*, for plaintiff.

*Johnson & Lentz*, for defendants.

THAYER, J. This is an ejectment suit involving the title to 320 acres of land in Butler county, Mo. The county is the common source of title, the lands in question being a part of those originally ceded to the county by the state as swamp lands, under the acts of March 3, 1851, and February 23, 1853. Sess. Laws Mo. 1851, p. 238; Sess. Laws Mo. 1853, p. 108. Plaintiff derives title under a deed executed by Daniel L. Jennings on October 4, 1858, as commissioner of Butler county, appointed to make conveyances to purchasers of such swamp lands as had been fully paid for. Defendants are in possession under a patent for the same lands granted by the county to J. M. Potter on March 9, 1887.

The opinion which I have formed on the various questions discussed by counsel may be stated as follows: The objection made by defendants' attorney to the admission of the certified copies of the entries said to be contained in a book now in the custody of the clerk of the county court of Butler county, Mo., and variously termed the "Record of the Register of Swamp Lands," and the "Recorder's Register of Swamp Lands of Butler County, Missouri," in my judgment, is well taken. So far as was shown, there was no law in force at the time the entries in question purport to have been made, requiring either the register or receiver to make such entries, or to keep any such book as that from which the entries are said to have been copied. The book is not a public record, and copies of entries therein, certified by the clerk aforesaid, are not admissible in evidence. If the entries in question are admissible on any other ground,—for instance, as *memoranda* made in the course of the discharge of official duty,—the requisite proof was not made to authorize their admission on that ground. The certified copies of the entries aforesaid are accordingly rejected.

The objection made to the introduction of the deed of Daniel L. Jennings, as commissioner, to Mary Tanner, on the ground that it was not executed under seal, is fully met and overcome by a late decision of the supreme court of this state, not as yet reported in the published volumes of decisions, to-wit, *McCoy* v. *Cassidy*, 9 S. W. Rep. 926. The case holds that, even though a certified copy of a deed offered in evidence shows no seal or scrawl opposite the grantor's signature, yet, if in the attestation clause the deed purports to be "signed and sealed" by the grantor, a presumption arises that the original deed was duly sealed as the law requires. The case of *Hamilton* v. *Boggess*, 63 Mo. 233, is thereby expressly overruled. The certified copy of the Jennings deed that was offered (the

original not having been produced) in the attestation clause recites that it was executed "under the hand and seal [of the grantor] as commissioner aforesaid." Under the authority cited, that recital raises the presumption that the original was duly sealed.

It is no doubt true, as claimed by defendants' counsel, that the county court of Butler county had no authority to appoint a commissioner to make conveyances of its swamp lands. The act of March 3, 1851, *supra,* made it the duty of the governor to issue patents for such lands, when paid for. That point is expressly decided in *Sturgeon* v. *Hampton*, 88 Mo. 212, and is clearly intimated in previous cases, to-wit, *Burton Co.* v. *Walser*, 47 Mo. 194; *Wilcoxon* v. *Osborn*, 77 Mo. 627. In actions of this character the decisions of the highest court in the state, on points of the kind last mentioned, are controlling authority in the federal courts. Therefore it must be regarded as settled that the Jennings' deed, standing by itself, conveyed no title to the lands in controversy.

But it was because many such invalid deeds had been made throughout the state, by reason of a false construction of the various acts relating to swamp lands, that the curative act of March 26, 1868, was passed. Sess. Laws Mo. 1868, p. 67 It has been heretofore held, in effect, that the main purpose of the act of 1868 was to validate swamp-land deeds that had been theretofore executed by commissioners appointed for that purpose. *Sturgeon* v. *Hampton, supra; Burton Co.* v. *Walser, supra; Wilcoxon* v. *Osborn, supra.* The act of 1868 in broad terms declared that such commissioners' deeds "shall be deemed and held to be valid and legal, * * * and shall vest in the purchaser of any such lands all right, title, or interest of counties in said lands, as fully as if said patents or deeds had been granted by the governor of the state," whose duty it was, under the act of March 3, 1851, to grant patents for swamp lands when sold by the various counties. It is insisted, however, by defendants' counsel, that the act of March 26, 1868, did not validate the Jennings deed, for the reason that there is no proof that the grantee in that deed ever paid Butler county for the lands conveyed to her. It is furthermore urged that, even if there is some proof of payment, it is not shown that the grantee paid the price therefor established by law, and that it does not appear that the sale of the lands in question was conducted in conformity with law. The exceptions so taken to the deed clearly assume that it was plaintiff's duty, before offering the commissioner's deed, to show that the sale was regularly conducted; that the purchase price was paid in full, according to the rate established by law for the sale of swamp lands; and that, until such proof was furnished, the commissioner's deed was not brought within the operation of the act of 1868. This, in my judgment, is a false assumption as to the burden of proof in this class of cases. Certainly the plaintiff would not have been required to make such proof if he had produced a patent for the lands granted by the governor. A patent granted by the governor would have been *prima facie* sufficient to divest the title of the county, without proof of an antecedent purchase, payment, etc. Now, the act of 1868 in terms gives to a commissioner's deed the force and effect of a patent issued by the gov-

v.37F.no.14— 49

ernor, when it is shown to relate to swamp lands. That was the purpose of the act,—to validate such deeds by giving them the force and effect of patents; and the act is not void on account of its retrospective character, as was held in *Barton Co.* v. *Walser, supra.* The stipulation offered in the present case admitted that the lands in controversy were swamp lands, and that they had been patented to the state by the general government, and that the state had furnished lists and plats thereof to the county. Plaintiff proved that Daniel L. Jennings, on May 15, 1858, had been duly appointed commissioner of Butler county, to make conveyances in the name of the county to purchasers of swamp lands. The commissioner's deed, reciting full payment for the lands, was then read. This proof, with the aid of the act of 1868, made out a *prima facie* case. It placed the plaintiff in the same attitude he would have occupied if he had produced and offered a patent signed by the governor. It is very true that in the case of *Barton Co.* v. *Walser* it was held that if there was any fraud or other infirmity attending a sale of swamp lands, which would render the sale void, such fact might be shown to defeat a commissioner's deed, notwithstanding the curative act of 1868. In the case of *Sturgeon* v. *Hampton,* 88 Mo. 215, *supra,* it was also held to be the purpose of the act of 1868 to make valid, deeds executed by officers who had no authority to make deeds. It was further said that the act was not intended to validate sales made in violation of law, or to make valid a void sale, or to make valid a deed, when the purchaser was not entitled to one. But when a commissioner's deed is produced, and the officer's authority from the county to make deeds of its class is established, and the lands are shown to be swamp lands, as in the present case, upon whom rests the burden of showing that the sale was void for violation of law, and that the purchaser was not in fact entitled to a deed, although the county, acting by its commissioner, has elected to execute one? Manifestly the person who alleges facts calculated to impeach the conveyance, and take it out of the operation of the act, ought to prove the facts so alleged. The construction which defendants' attorneys apparently place on the act of 1868, in effect adds a proviso thereto that commissioners' deeds shall only be deemed valid in the event that the grantee therein, or those claiming under him, first prove that they made purchases in strict conformity with law, and have paid the purchase price in full, at the established rate. The act itself contains no such proviso, and was obviously intended to cast the burden of proving such facts on those who contested the validity of such deeds. When the plaintiff made proof of Jennings' authority as aforesaid, and offered the commissioner's deed and other derivative deeds, which are not assailed, he made out a *prima facie* case. Defendants, on their part, introduced no testimony to impeach the Jennings deed. The only evidence having such a tendency was contained in the certified copies of the entries above mentioned, which must be rejected, on defendants' motion, for the reason before given.

The proof respecting the damage done to the land by the removal of timber thereon by the defendants, is not very satisfactory, and there is

no evidence as to the rental value. I assess the damages at the sum of $500, and the value of the rentals at a nominal sum, to-wit, $1 per month. Judgment will be entered against all of the defendants for possession of the premises, and against Potter for the damages, as he appears to be the one who was instrumental in selling the timber.