THE STATE OF IOWA, Appellee, v. J. M. HANLIN, Appellant.

Indictment: MOTION TO RE-SUBMIT: RESISTANCE: ESTOPPEL. A defendant, who, before trial successfully resists a motion by the State to set aside the indictment and re-submit the cause to the grand jury, because of alleged defects therein, cannot upon conviction rely on a denial of the motion as ground for reversal.

**Public officers:** FALSIFICATION OF ACCOUNTS: EVIDENCE: INSTRUC- TION. Proof of a corrupt purpose or motive is not necessary to support an indictment charging a public officer with falsifying the books of account of his office; that it was wilfully or intentionally done is sufficient; and an instruction that defendant could not be held liable for mere discrepancies arising from oversight, forgetfulness or incompetency, but that if they were knowingly and intentionally made he would be liable, was as favorable as he could rightfully expect.

**Same.** The fact that accounts are entered in a book not required by law to be kept is not a defense to a prosecution for falsifying the accounts of a public office; if the same are kept in some book in the office from which settlement is to be made with the parties to whom the funds belong it is sufficient.

**Same:** LIABILITY OF DEPUTY CLERK. A deputy clerk of the court may be convicted of falsifying the accounts of a public office under Code, section 4910, irrespective of whether he is an officer within the legal definition of the term, as the statute is not restricted to public officers.

*Appeal from Lucas District Court.*—Hon. Robert Sloan, Judge.

Wednesday, January 9, 1907.

Rehearing Denied, Monday, May 20, 1907.

The opinion states the case.— *Affirmed.*

*Penick & Anderson* and *O. A. & L. B. Bartholomew,* for appellant.

*Chas. W. Mullan,* Attorney General, and *L. De Graff,* Assistant Attorney General, for the State.

Weaver, J.— From January 1, 1901, to January 1, 1905, one E. S. Wells was the duly qualified and acting clerk of the district court of Lucas county, Iowa. During the same period the defendant herein served continuously as Mr. Wells' deputy in said position, and as such received and paid out a large proportion of the moneys of said of-

fice, and had principal charge of its books of account. At the close of his term of service there were found, or claimed to be found, some discrepancies in the books or confusion in the accounts, indicating that numerous items of fees and fines received by the office and payable to Lucas county had not been properly credited to its account. Growing out of this alleged condition of affairs the defendant was indicted upon the charge of falsifying the accounts of the office. Before the cause came on for trial the county attorney, becoming convinced that the indictment was defective in failing to particularly state the specific acts of falsification charged against the defendant, moved the court on that ground to set aside the indictment and resubmit the matter to the grand jury. This motion was resisted by counsel for defense, and overruled. The defendant pleaded not guilty to the charge as made, but on trial to a jury he was convicted, and from a judgment requiring him to pay a fine of $100 and costs of prosecution he appeals to this court.

It is argued that the indictment fails to charge any specific act of wrongdoing, and is therefore insufficient to warrant or uphold a conviction. We are of the opinion that

1. Indictment: motion to resubmit: resistance: estoppel.

the indictment was defective, and if the appellant was in a position to take advantage of the defect we should have no hesitation in reversing the judgment against him. But, as we have already noted, when the insufficiency of the formal charge was discovered, and it was sought to send the case back to the grand jury in order that the matter in controversy might be heard and disposed of upon its merits, the defendant by his counsel resisted the application and secured a ruling that the trial proceed upon the indictment as it stood. The same counsel now repudiate the ruling which they induced the court to make, and in support of the appeal insist that said application "should have been sustained by the court upon its own motion." It would seem unnecessary to say that a party cannot thus play fast and loose with the law

or with the court. An accused person is not always under obligation to point out fatal defects in the indictment against him, but may remain silent, and, if an adverse verdict is obtained, raise the question in arrest of judgment. If, however, before entering upon the trial, the State discovers the defect and moves a resubmission for its correction and the defendant successfully resists the motion, his mouth is forever closed to insist that the court should not have taken him at his word. See cases cited in volume 2, Cyclopedia Pleading & Practice, 516, 517. That it is competent for the trial court to order the resubmission of a criminal charge to the grand jury where the indictment is clearly defective, see *State v. Kimble,* 104 Iowa, 19.

II. Exception is taken to the sufficiency of the evidence to support a verdict of guilty. While the case as here presented is such that some members of the court would be better satisfied with a contrary result, yet there is evidence fairly tending to establish the claims of the prosecution, and, as the verdict of the jury has passed the scrutiny of the trial court, we do not feel at liberty to set it aside. It is made quite clear that in substantially all of the matters brought in question by the charge against the appellant he made proper entry in the judgment, or combination docket kept in the clerk's office, of the moneys collected and received by him in his official capacity. It appears, however, that the clerk or the appellant provided and made use of two other books, known as the " cash book " and " distribution book," into which the cash items were gathered or transferred from the dockets, and such portions of said items as indicated collections received which were payable to the county were segregated and entered in a separate column. When settlements were made between the clerk and the county, resort was had to these last mentioned books, instead of tracing the several items through the dockets, and the clerk from time to time paid over to the county treasurer the balances thus

2. PUBLIC
OFFICERS:
falsification
of accounts:
evidence:
instruction.

shown in his hands.    It appears, however, that the transfer
of the entries from the dockets to the cash book and distribu-
tion book was imperfectly done; some of the items being
entirely omitted, and in some other instances the amounts
entered in the cash book or distribution book were less than
the amounts shown by the dockets from which they were
taken.    These items were mostly of somewhat trivial char-
acter, ranging from twenty-five cents to $15, but the aggre-
gate at the close of appellant's term of service was a matter
of several hundred dollars.

Appellant is not charged with the embezzlement of any
of these funds, nor is it urged in argument on part of the
State that he in any manner profited by his alleged falsifica-
tion of the books.    Nor is proof of such fraudulent act or
purpose essential to the State's case.    The charge against
the appellant is laid under Code, section 4910, which makes
the falsification of the books or accounts of the clerk's of-
fice a misdemeanor.    The act is forbidden without refer-
ence to the motive which prompts it, and if it be done will-
fully or intentionally, and that fact be sufficiently shown
by the evidence, a conviction will be upheld, even though
there be an entire failure of proof showing corrupt purpose
or motive on part of the accused.    Indeed, if fraudulent pur-
pose be found to accompany the act forbidden by Code, sec-
tion 4910, it will constitute the much greater offense of
forgery under the provisions of section 4853.    The fact that
the latter offense is classed as a forgery and punished as a
felony, while the former is classed as a misdemeanor only,
would seem to indicate that the primary purpose of the pro-
hibition and penalty prescribed by section 4910 is to insure
scrupulous care and attention in making and keeping the
books of the office, rather than to punish fraud and corrup-
tion in the discharge of such duty.

The trial court instructed the jury that mere mistakes,
discrepancies arising from mere oversight, forgetfulness, or
incompetence in keeping the accounts of the office, would

not justify a conviction, and that defendant could be held liable in this proceeding for only such discrepancies and incorrect entries, if any, as were knowingly and intentionally made by him. This interpretation of the statute was as favorable to the appellant as he could rightfully expect. The verdict of the jury is therefore equivalent to a special finding that at least some of the omissions or incorrect entries made by him in the clerk's books of account were not the product of mere mistake or inadvertence on his part.

Neither are we prepared to say that the fact that the books in the keeping of which these discrepancies appear were not books specifically prescribed by the statute to be kept in the office will serve to prevent the application of the statute to punish their falsification. If the clerk supplements the books which the statute expressly requires him to keep by other books in which for the convenience of the office or persons having dealings therewith the accounts of the business of such office are kept, or to which such accounts are transferred, such books are to be considered as being within the protection of the statute now under consideration, and not as mere private memoranda, having no relation to the public records. That statute (Code, section 4910) not only prescribes a penalty for falsifying a court " docket," but also for falsifying the " accounts " of the office for fees and fines collected, without any reference to the book or books in which such accounts may be kept. If such account be kept in the office in some book from which settlement is made with the parties to whom the fees and fines are payable, the account thus kept comes fairly within the meaning of that word as used in the statute. Irrespective of express statutory direction or designation, it has often been held that books actually kept in a public office and containing an account of the transactions and business thereof are public records. *Coleman v. Commonwealth,* 25 Grat. (Va.) 865 (18 Am. Rep. 711). This rule has been applied to a day book kept by a clerk of court,

3. SAME.

*Daly v. Webster,* 1 U. S. App. 573 (56 Fed. 483, 4 C. C. A. 10; also to the accounts of selectmen, *Thornton v. Campton,* 18 N. H. 20; to the bank pass book of a state treasurer, *Commonwealth v. Tate,* 89 Ky. 587 (13 S. W. 113); to books of account of a house of correction, *People v. Kemp,* 76 Mich. 410 (43 N. W. 439); and books of a county clerk showing his account with the treasurer, *Rizer v. Callen,* 27 Kan. 339.

Even where no express statutory requirement exists, it is still essential to the proper discharge of an official trust, that the incumbent of an office make and preserve a record of the business so intrusted to him, including a fair and full account of his receipts and expenditures in his official capacity, and when so kept the account is a record of his office, which he cannot knowingly and intentionally falsify without violation of law. The rule has been well stated by the Virginia court that, whenever a written record of the transactions of a public officer in his office is a convenient and appropriate mode of discharging the duties of his office, it is not only his right, but his duty, to keep that memorial, whether expressly required to do so or not, and when kept it becomes a public document, a public record belonging to the office, and not to the officer, is the property of the State, and not of the citizen, and is in no sense a mere private memorandum. *Coleman v. Commonwealth, supra.* There are not wanting cases which seem to uphold the contrary view, see *Carrington v. Potter* [C. C.], 37 Fed. 767; *Noble v. Douglass,* 56 Kan. 92 (42 Pac. 328); *Downing v. Brown,* 3 Colo. 571; but the doctrine here approved is both reasonable and just, and cannot be departed from with safety to public interests.

We think there is no merit in counsel's contention that Code, section 4910, has no application to a deputy clerk. The statutory prohibition is not restricted to public officers. It provides a penalty for the falsification of the records and accounts of an office, by whom-

4. SAME: liability of deputy clerks.

soever the wrongful act is done, whether it be the officer himself, his deputy, or other person. . In view of the comprehensive terms of the statute, it is unnecessary for us to consider whether counsel is correct in their claim that a deputy clerk is not an officer within the legal definition of that term. Without further discussion, we have to say that after reading the record of this case with much care we find no good ground for disturbing the verdict and judgment. It is not disputed that defendant had a large share in the making and keeping of the accounts of the office, and that in the entries made by him there were a large number of errors, the effect of which, if not corrected, was to deprive the county of a very considerable sum of money. As a witness, he concedes many of these discrepancies and makes no explanation thereof, save to say that they are the result of honest mistakes, and not of design on his part. All this may be true, but that was a question on which the State was entitled to have the finding of the jury. It was submitted under proper instructions and the finding was adverse to the appellant. There is evidence from which fair-minded men could reach that conclusion, and we have no authority to interfere. · Some other questions have been argued by counsel, but so far as they properly arise upon the record they are controlled by the conclusions already announced.

We find no reversible error, and the judgment of the district court is *affirmed*.