STONE v. PERKINS et al.

(Circuit Court, E. D. Missouri. March 2, 1898.)

1. MISSOURI SWAMP LANDS—SALES ON EXECUTION.

Swamp lands, granted by congress to Missouri, and by the state legislature to Stoddard county, are held in trust for the benefit of the county public schools, and are not subject to sale on execution to pay a general judgment against the county; and no title is acquired by such a sale.

2. SAME — CONVEYANCES IN SETTLEMENT OF ILLEGAL CLAIMS — AUTHORITY OF COUNTY COURT.

In Missouri, the county courts are agents of the county to dispose of swamp school lands, but can only exercise the trust in strict accordance with the statutory scheme of disposition, which requires that such disposition shall be by sale at not less than $1.25 per acre. Hence, conveyances made for less than that price, pursuant to a compromise and settlement effected by the court with purchasers claiming under an invalid sale on execution against

the county, are themselves invalid, as being an indirect appropriation of the land to the payment of the judgment, and as being a bartering, instead of a sale.

8. EJECTMENT—EQUITABLE TITLE.

In ejectment in the federal courts, plaintiff can get no support for his title because of alleged estoppel or recognition thereof by the defendant, but must stand or fall on his own legal title.

John F. Greene and Geo. O. Crane, for plaintiff.
Phillips & Walker and Lee & McKeighan, for defendants.

ADAMS, District Judge. This is an action at law to recover the possession of certain real estate located in Stoddard county, Mo. Plaintiff and defendants each claim title under grants from Stoddard county. The land in dispute is conceded to be swamp land, within the meaning of the acts of congress and the acts of the legislature of Missouri in relation to "swamp" or "overflowed" lands. Plaintiff claims title under a sale made on execution issued on a general judgment for $1,136.80, against Stoddard county, by the circuit court of that county, in the year 1868. The judgment was rendered on March 31, 1868, in a cause in which Lewis M. Ringer was plaintiff and Stoddard county defendant. The land was sold under execution on September 16, 1868. Lewis M. Ringer became the purchaser, and his title is now held, through mesne conveyances, by the plaintiff. Without referring specially to the several acts of congress granting this and other swamp lands to Missouri, or to the acts of the legislature of Missouri granting the same to Stoddard county, I content myself with stating that it appears from such acts,—as construed by the supreme court of Missouri in the cases of State v. New Madrid Co., 51 Mo. 85; Sturgeon v. Hampton, 88 Mo. 203; Railway Co. v. Hatton, 102 Mo. 45, 14 S. W. 763; and St. Louis, C. G. & Ft. S. Ry. Co. v. Wayne Co., 125 Mo. 351, 28 S. W. 494,—that the land in question was held in trust by Stoddard county for the ultimate use and benefit of the public schools of the county, and was not a part of the general assets of the county of Stoddard, or subject to be sold on execution to pay a general judgment against the county. Under these authorities, the plaintiff's remote grantor acquired no title by virtue of the execution sale, and the plaintiff has acquired none by the several mesne conveyances from such grantor to him.

2. Plaintiff next claims title to the land in controversy by and through a conveyance made on the 28th day of April, 1869, by one Alferd Elzroth, acting as special commissioner for the county of Stoddard, to Lewis M. Ringer. At the time Ringer purchased the tract of land now in controversy at execution sale, divers other persons purchased different tracts of land offered for sale at the same time to satisfy the judgment of Ringer; so that there were sold on that occasion 107,000 acres of this swamp land to satisfy Ringer's judgment against the county. The several purchasers claimed title as a result of their purchases. It appears, however, that soon after these purchases were made the county court of Stoddard county was advised that the sales of this trust property to satisfy a general judgment were void, and employed W. G. Phelan and David

G. Hicks, attorneys at law, to bring suits against the several purchasers to recover the land. A contract was entered into between the county and these attorneys, by the terms of which they were to receive 50,000 acres of this land as their fee in the event of success. Before anything was done in the way of instituting suits under this contract, the county court met the several purchasers at the execution sale, and compromised with them. This compromise also necessarily involved a compromise with the attorneys, who had this contract claim to 50,000 acres of the land. By the terms of the compromise the several purchasers agreed to pay to the county of Stoddard, in sums respectively corresponding to the lands which they had purchased, the aggregate amount of $13,500, in Stoddard county warrants, or in their promissory notes, secured by mortgages on real estate, bearing 6 per cent. interest, and payable in one and two years thereafter. The attorneys, according to the terms of the compromise, were each to receive 10,000 acres of the land in satisfaction of their rights under their contract of employment. It appears that Alferd Elzroth was appointed by the county court as a special commissioner to make, execute, and deliver to the several purchasers at the execution sale, and also to the two attorneys, Phelan and Hicks, conveyances, or "letters patent," as they are called in the order of compromise, for their respective shares of the land. It further appears that Elzroth made the deeds, in accordance with the terms of the compromise agreement, and, among them, made one to Lewis M. Ringer for his proportion of the land, which is now held through mesne conveyances by the plaintiff.

The question now arises whether this deed, made by Commissioner Elzroth, conveying the land in question, as a result of the aforesaid compromise, to the plaintiff's remote grantor, Ringer, constitutes a valid legal title to the land? In determining the effect to be given to this commissioner's deed, it must be borne in mind that the "county courts of Missouri are not general agents of the counties. * * * Their powers are limited and defined by law. * * * The statutes constitute their warrant of attorney. * * * Whenever they step outside of and beyond their statutory authority, their acts are void. * * * Persons dealing with such agents are bound to take notice of their powers and authority." Such are the conclusions reached, and the doctrine held, in the following cases: Sturgeon v. Hampton, supra; Saline Co. v. Wilson, 61 Mo. 237; Wolcott v. Lawrence Co., 26 Mo. 275; State v. Bank of Missouri, 45 Mo. 538; Andrew Co. v. Craig, 32 Mo. 531.

Section 3 of the act of March 27, 1868 (Sess. Acts Mo. 1868, p. 69), in force at the time this compromise was made, as construed by the supreme court of Missouri in Railway Co. v. Hatton, 102 Mo. 45, 14 S. W. 763, requires the sale of all swamp lands to be for a sum not less than $1.25 per acre, and prohibits the sale or transfer thereof for any other consideration, except, possibly, for work done or to be done in draining or reclaiming other swamp lands. The decisions of the supreme court of Missouri already quoted construe the statutes of the state, and establish rules of property, and to that extent are followed by the courts of the United States. Burgess v. Seligman, 107

U. S. 20, 2 Sup. Ct. 10; Bucher v. Railroad Co., 125 U. S. 555, 584, 8 Sup. Ct. 974, and cases cited. Accordingly, I must hold that the county of Stoddard held the swamp lands in controversy as trustee for its schools. The county court was its agent to execute the trust, and to so execute it only in strict accordance with the statutory scheme. Under this view of the law, it is clear to my mind that the county court exceeded its authority in making the compromise agreement in question, and that the deed made by the commissioner, Elzroth, to plaintiff's grantor, pursuant to such compromise, conveyed no title for the following reasons: (1) Because the compromise was based upon a recognition that Ringer had some right to the land, arising out of the execution sale, and in the settlement with him, and the deed executed pursuant thereto, trust property belonging to the public schools was indirectly appropriated to the payment and satisfaction of a general judgment against Stoddard county. (2) Because the compromise involved a settlement of a large demand, on the part of the attorneys above named, against Stoddard county, arising out of their said contract of employment with the county. (3) Because, by the terms and provisions of the compromise, the land was bartered; that is to say, was not sold for cash, or for work done or to be done in draining or reclaiming other swamp lands. (4) Because, treating the consideration received as the equivalent of cash to the amount of the alleged face value of the securities taken (the same being $13,500, in the aggregate, for $107,000 acres of land sold), it amounts to only about 8 cents per acre, instead of $1.25, as required by the act of March 27, 1868, supra, as construed by the supreme court of Missouri, supra. (5) Because the compromise as made, taken as a whole, as above analyzed, can in no proper sense be regarded as a sale and disposition of the swamp lands for the benefit of the schools of the county, under and pursuant to the statutory authority conferred upon the county court.

It cannot be contended that Ringer, plaintiff's remote grantor, or any of the intervening purchasers, are protected, as innocent purchasers, against the want of power in the county court, as all persons dealing with the county courts of this state, or with any agent appointed by county courts, are bound to take notice of their powers and authority. Not only so, but the record of the proceedings of the county court of Stoddard county, in relation to the compromise, and conferring the power upon the commissioner, clearly set forth all of the facts from which the want of power to make the conveyance fully appears. Counsel for plaintiff apparently realize the defect in the legal title of their client, but strenuously contend that the county of Stoddard, and its grantees, the defendants in this case, are estopped from questioning or denying plaintiff's legal title. This they claim because the county took no action in the way of asserting any adverse claim to the plaintiff's until the year 1892, when it executed a proper conveyance of the lands to the defendants, and because, during this time, plaintiff and his grantors have exercised rights of ownership over the land in making divers conveyances thereof, and in paying taxes assessed against the same during this period; in other words, because the county of Stoddard, defendants' grantor, so ac-

quiesced in plaintiff's title that it and its grantees, the defendants in this case, are now estopped from denying the validity of the same. In considering this contention, it must be borne in mind that plaintiff's action is an action at law,—an action of ejectment, pure and simple. The defendants' answer consists of a general denial only. The form and substance of the pleadings cannot be criticised, because they present the only issue available to the parties in such actions in the courts of the United States. It is well settled that legal and equitable claims cannot be blended together in one suit in the circuit courts of the United States. Bennett v. Butterworth, 11 How. 669; Thompson v. Railroad Co., 6 Wall. 134; Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712; Davis v. Davis, 18 C. C. A. 438, 72 Fed. 81.

Whatever may be the intimations found in the several cases cited by the plaintiff's counsel in support of the proposition that the equitable estoppel claimed to exist in this case may be availed of in support of the legal cause of action set forth in the petition, it is certain that in the practice of the United States courts, where legal and equitable causes of action cannot be blended, plaintiff can get no support to his legal title in this case by reason of any such equitable consideration. He must stand or fall on his own legal title, and cannot rely upon the weakness of the defendants' title. If this were an action in equity, setting forth all of the facts of the case, defendants might avail themselves of their equitable rights, if any they have; but in this case, for the reasons already stated, they cannot do so. Having reached the conclusion that the plaintiff has no legal title, there is no other course to pursue but to render a judgment in favor of the defendants. It is accordingly done.