## J. H. BAYLESS et al. v. JUSTUS GIBBS et al., Appellants.

### Division One, June 28, 1913.

1. **SWAMP LANDS: Sale for Fifty Cents an Acre: Void.** Neither the county court of Butler county, nor any commissioner appointed by it, had any authority in November, 1867, to sell for fifty cents per acre any swamp lands lying within said county, granted to Missouri by act of Congress, and by the State donated to said county by the Act of 1853, Laws 1852-3, p. 108, "upon the terms and provisions" stated in the act of March 3, 1851, Laws 1850-1, p. 238; for said last act "provided that said scrip shall in no instance be sold for a less amount than one dollar per acre." The clear purpose of the limitation was to prevent the swamp lands, donated to reclamation and school purposes, from being frittered away, and the county court had no more authority to sell them for less than the minimum price fixed by the law than it had to give them away; and a deed, made by the county commissioner in November, 1867, which recites that the lands were sold for fifty cents an acre, is null and void on its face.

2. ———: ———: ———: **Powers of County Courts: Notice of Limitation.** County courts are not general agents of their counties. They are courts of limited jurisdictions, with powers defined and limited by the statutes, which constitute their

warrant of authority, and when they act outside of or in excess of their statutory authority, their acts are null and void; and all persons dealing with them, when they essay to act as agents of their respective counties, are bound to take notice of their powers. The county courts of Butler and the other nine counties named in the Acts of 1851, 1853 and 1855, were by those express statutes restricted from selling the swamp lands lying therein for less than one dollar an acre, and a deed by a commissioner, appointed by the county court, made in November, 1867, which recited a consideration of fifty cents an acre, was null and void, and all persons who claim from the grantee therein, whether by conveyance or as heirs under the law of descents and distribution, are bound with notice that such deed was void. [Distinguishing Simpson v. Stoddard County, 173 Mo. 421, interpreting Act of March 27, 1868, Laws 1868, p. 68, and Act of March 10, 1869, Laws 1869, p. 66.]

3. ————: **Title in Butler and Other Counties.** The counties of Butler, Stoddard and the other eight counties mentioned in the Laws of 1854-5, p. 154, and the Act of March 3, 1851, Laws 1850-1, p. 238, until the passage of the Act of March 27, 1868, Laws 1868, p. 68, had no title to the swamp lands therein except as they held the title under the Act of February 23, 1853, Laws 1852-3, p. 108, "upon the terms and provisions" stated in the said Act of 1851; that is, they had no title of their own to said swamp lands until the passage of the said Act of 1868, and they had no power prior to said date to convey swamp lands for less than one dollar an acre. The statute found in Laws 1854-5, p. 160, pertaining to swamp lands generally, does not apply to the swamp lands in the ten counties mentioned in the statute found on page 154 of the same session laws, which last act is carried forward in the General Statutes of 1865, chap. 49, p. 277, section 19 of which provides that "the provisions of this chapter shall not extend to or be in force in the counties of Wayne, Butler, Stoddard," etc., and that section remained in force until the passage of the Act of March 27, 1868, Laws 1868, p. 68.

Appeal from Butler Circuit Court.—*Hon. Jesse C. Sheppard*, Judge.

REVERSED.

*N. A. Mozley, Leslie C. Green* and *Ernest A. Green* for appellants.

(1) The court erred in finding for the plaintiffs and against defendants. The patent under which

plaintiffs claim title is void on its face, in that it shows upon its fáce that the land was sold for a less consideration than the county was authorized under the Swamp Land acts to sell same.   Laws 1854-55, p. 154; Sec. 19, Chap. 48, G. S. 1865, p. 280; Sec. 4, Chap. 109, G. S. 1865, p. 444; Laws 1854-55, p. 160; Laws 1857, Adj. ses., p. 32; Laws 1868, p. 168; Simpson v. Stoddard County, 173 Mo. 421; State ex rel. v. Crumb, 157 Mo. 545; Railroad v. Hatton, 102 Mo. 55; Sturgeon v. Hampton, 88 Mo. 203; Butler v. Sullivan County, 108 Mo. 630; Railroad v. Wayne County, 125 Mo. 351; Moss v. Kauffman, 131 Mo. 424; Hooke v. Chitwood, 127 Mo. 372; Tydings v. Pitcher, 82 Mo. 379; State ex rel. v. Co. Ct. New Madrid Co., 51 Mo. 85; State ex rel. v. Wayne Co. Ct., 98 Mo. 366; Wheeler v. Land Co., 193 Mo. 279. (2) The court erred in admitting in evidence the patent under which plaintiffs claim title, for two additional reasons, viz.: (a) There was no showing of any authority vested in the commissioner named to make the patent; and, (b) at the time of making same, Butler county had no title to the land in controversy.   Sec. 4, chap. 109, G. S. 1865, p. 444; Funkhouser v. Mallen, 62 Mo. 555; Prior v. Scott, 87 Mo. 303; Cases under point 1.

*Henry N. Phillips* and *Abington & Phillips* for respondents.

(1)   The lands involved in this litigation are a part of what is known or commonly called "the swamp or overflowed lands of Butler county, Missouri." These lands with others were granted to Missouri by the United States by an act of Congress approved September 28, 1850, and were patented to the State by the United States prior to November 4, 1857.   By an act of the Legislature, approved March 3, 1851, these lands were donated to the counties in which they were situated, excepting certain counties in Southeast Mis-

souri, of which Butler was one. Laws 1851, p. 238. But in 1853 the Legislature passed another act donating to the excepted counties, among which Butler was one, the swamp lands which were situated within their limits, respectively. Laws 1853, p. 108. The excepted counteis above referred to, among which was Butler, were not under or included within the operations or requirements of the general swamp land law of the State until 1868. R. S. 1855, p. 1055, sec. 20; G. S. 1865, chap. 48, sec. 19. (2) It is difficult to discern the reason why appellant under point one in his brief cited Sec. 19, chap. 48, G. S. 1865, p. 280, or sec. 4, chap. 109, G. S. 1865, p. 444, as the first of these citations shows absolutely that the swamp land of Butler county was not governed by that law, as section 19 is as follows: "The provisions of this chapter shall not extend to or be in force in the counties of Wayne, Butler, Stoddard" etc., and the second citation, section 4, provides for the appointment of a commissioner to dispose or sell any real estate belonging to the county, but that did not apply to swamp lands as has been decided time and again by this court, to the effect that the swamp lands were not the general property of the county. State ex rel. Robbins v. New Madrid County, 51 Mo. 83; Sturgeon v. Hampton, 88 Mo. 203. (3) The control of the swamp land in the excepted counties, of which Butler was one, was placed in the county courts and the office of register and receiver was provided for, and the lands could be sold at the discretion of the county courts, and in Bollinger, Butler, Dunklin, Stoddard and one or two others land could be sold as low as fifty cents per acre, or, as for that matter, at any price which the county court saw proper to make. Linville v. Bohannon, 60 Mo. 558; Pool v. Brown, 98 Mo. 684; Gregg v. Hall, 138 Mo. 290; Simpson v. Stoddard County, 173 Mo. 444. (4) On March 1, 1855, the Legislature enacted a law

in relation to swamp lands concerning the counties of New Madrid, Pemiscot, Mississippi, Scott, Cape Girardeau, Stoddard, Wayne, Ripley, Butler and Dunklin, in the management of their swamp lands, which was the law concerning the control of these lands in said counties, with certain modifications thereto made in 1857 and 1859 on until the general law of 1868 was passed and was in force at the time the commissioner's deed in this case was made and recorded. Laws 1855, p. 154-159. (5) The Legislature of the State passed another law, February 28, 1855, as follows: "Sec. 1. That the several county courts of the State are hereby authorized to sell and dispose of the swamp or overflowed lands within and for the respective counties, either with or without draining and reclaiming the same, as in their discretion they may think most conducive to the interests of said counties," thereby giving the county courts a free rein and the absolute control of these lands both as to the price and method of sale, and this act was never repealed or even modified until the general law of 1868 was enacted, and therefore the Act of February 28, 1855, was in full force and effect when the commissioner's deed to Bayless was made and recorded in November, 1867. (6) Appellant's second contention is that at the time Addy made the commissioner's deed to Bayless, Butler county had no title to its swamp lands. In regard to that contention we say: The swamp lands were granted or donated by the State to the county of Butler in 1853 as shown above, and again by an Act of 1855 and again by an Act approved November 4, 1857, and the county court could dispose of them as they saw fit. Act of December 13, 1855; Act of November 4, 1857, p. 32; Act of February 28, 1855; Laws 1856-7, pp. 349, 350, 351, 360; Laws 1855, p. 160; Barton County v. Walser, 47 Mo. 197; Sturgeon v. Hampton, 88 Mo. 203; Linville v. Bohannon, 60 Mo. 558; Pool v. Brown,

98 Mo. 684; Simpson v. Stoddard County, 173 Mo. 443; State ex rel. v. Wayne Co. Court, 98 Mo. 306.

WOODSON, P. J.—This was a suit instituted in the circuit court of Butler county by the plaintiffs against the defendants, under section 650, Revised Statutes 1899, to quiet title to a certain quarter section of land situate in said county, and particularly described in the petition. The petition also contained a second count in ejectment for the possession of the land.

A trial was had which resulted in a judgment for the plaintiffs on both counts of the petition; and after moving unsuccessfully for a new trial, the defendants appealed the cause to this court.

Counsel for appellants have made a clear and terse statement of the case, which counsel for respondents say is correct, and for that reason we will adopt that statement as our statement of the case, which is as follows:

"This is an action instituted in the circuit court of Butler county, Missouri, to quiet title and in ejectment. The petition is in two counts, the first count being an ordinary action to try title under section 650, Revised Statutes 1899, and the second an action in ejectment. The land involved lies in Butler county, Missouri, and is described as follows:

"The northeast quarter of the southwest quarter of section twenty-eight, township twenty-five, range seven east.

"The answers of the respective defendants denied that plaintiffs had any title, estate or interest in the land involved, and averred that the defendant Justus Gibbs was the sole and absolute owner in fee simple of the premises described, subject only to a deed of trust given by defendant James V. Webb to his co-defendant, Ernest Bacon, to secure the payment of a

251 Mo.—32

promissory note for $300.   The defendant, Justus Gibbs, admitted that he was in possession of the real estate described in the petition, but both defendants Webb and Bacon specifically denied that they were in the possession thereof.

"The cause was tried at the October term, 1909, of the Butler Circuit Court, and on the 3d day of December, 1909, and during the same term, the court rendered judgment in favor of the plaintiffs on both counts of their petition.   The judgment found plaintiffs to be the owners of the premises described in their petition, and also found defendants guilty of trespass and ejectment, assessed plaintiffs' damages at the sum of one dollar and monthly rents and profits at five dollars per month until plaintiffs be restored to possession.

"On the trial, the testimony showed Butler county to be the alleged common source of title.   Plaintiffs thereupon offered in evidence a commissioner's deed from Chas. W. Addy, commissioner, to John Bayless, dated November 15, 1867, and recorded November 27, 1867, in the deed records of Butler county, Missouri. This deed recited a conveyance of one hundred and sixty acres of land, at fifty cents per acre, consideration eighty dollars.   This deed was objected to by defendants for three reasons, viz.:   (1) There was no showing of any authority vested in the commissioner named to make the conveyance for the county;  (2) that at the time of the conveyance, Butler county had no title; (3) that the deed on its face was void, in that the land was sold for a less consideration than counties were authorized under the Swamp Land acts to sell for at that time.   The court sustained the objection on the sole ground that no authority for the commissioner to make the deed was shown.   Thereupon plaintiffs offered a record of the county court of But-

ler county, of date January 18, 1866, reading as follows:

" 'It is ordered by the court that Charles W. Addy be and is hereby appointed swamp land commissioner, and that he give bond as required by law.'

"This offering was objected to, as being insufficient to authorize Charles W. Addy to make this particular patent, and the objection was overruled by the court, to which defendants excepted. Thereupon the commissioner's deed was again offered by the plaintiffs, and defendants renewed their objections thereto, which were overruled by the court, and defendants excepted.

"John H. Bayless, one of the plaintiffs, thereupon testified that John Bayless, to whom this land was patented, was now dead and that plaintiffs were his heirs.

"It was thereupon admitted by defendants that defendant Justus Gibbs was in possession of this land, but expressly denied that the other defendants were.

"This was all the evidence introduced by the plaintiffs, and thereupon defendants offered in evidence county court record of December 8, 1874, directing Charles W. Addy, commissioner of patents, to issue a patent to the St. Louis, Iron Mountain & Southern Railway Company for this land. Defendants next offered a certificate of purchase from Butler county, by Charles W. Addy, commissioner, to the St. Louis, Iron Mountain & Southern Railway Company, dated December 21, 1874, and conveying this land.

"Defendants' next offering was a general warranty deed from the St. Louis, Iron Mountain & Southern Railway Company to defendant James V. Webb, dated October 17, 1902, and conveying the premises in suit. Defendants next offered a general warranty deed from defendants James V. Webb and wife to co-defendant Justus Gibbs, dated December 31, 1904, and conveying the premises in suit. They also offered in

evidence a deed of trust from defendant James V. Webb and wife to defendant Ernest Bacon, to secure a promissory note for $300, dated December 30, 1904, and conveying this land.

"Defendants also offered the oral testimony of County Clerk M. J. Armstrong, and the records of the county court between January 18, 1866, and November 15, 1867, showing that no bond was ever filed by Charles W. Addy, the commissioner named in plaintiffs' deed, and that there was no order made at any time directing Charles W. Addy, commissioner, to make a patent to John Bayless, under which plaintiffs claimed title."

This was all the evidence in the case, and thereupon the court rendered judgment for the plaintiffs on both counts of the petition, as previously stated.

I.   Counsel for appellants ask that the judgment be reversed for five reasons assigned.

We will state and consider them in the order stated in their brief.

The first is stated in these words:

"The court erred in finding for the plaintiffs and against defendants.   The patent under which plaintiffs claim title is void on its face, in

Swamp Lands: that it shows upon its face that the
Sale for
Fifty Cents land was sold for a less consideration
an Acre. than the county was authorized under the Swamp Land acts to sell same."

This land is a portion of the great body of swamp and overflowed lands originally granted by the United States to the State of Missouri, by an act of Congress approved September 28, 1850.

This State by an act of the Legislature approved February 23, 1853 (Laws 1852-3, p. 108), donated these lands to Butler county, "upon the terms and provisions" stated in an act of the Legislature approved March 3, 1851 (Laws 1850-1, p. 238).

This, as well as the succeeding proposition contended for by counsel for appellants, calls for a careful consideration of the acts of the Legislature previously mentioned.

As regards this proposition: Section 1 of the Act of 1853, in so far as is here material, reads as follows:

"That all the swamp lands, lying in the counties of Scott, New Madrid, Pemiscot, Mississippi, Cape Girardeau, Stoddard, Dunklin, Ripley, Butler and Wayne, are hereby donated to the counties in which they lie, upon the terms and provisions of the act entitled 'An act donating certain swamp and overflowed lands to the counties in which they lie,' approved March 3, 1851."

We must not lose sight of the fact that the act of Congress mentioned granted these lands to the State of Missouri for the benefit of the public schools of the State, also of the fact that the section of the act of the Legislature just quoted donates said lands to the counties named, in which they are situate, *"upon the terms and provisions* of an act entitled 'An act donating certain swamp and overflowed lands to the counties in which they lie,' approved March 3, 1851." (The italics are ours and the materiality of which will be later considered.)

The former act, after providing a scheme and the means for the reclamation of said lands, in section 9 thereof provides as follows:

"That either of said counties as shall unite together for the reclamation of their lands, shall have full power to issue land scrip and sell the same, in order to raise funds for the prosecution of their works of reclamation, which said scrip shall entitle the holders thereof to a certificate for the amount of acres after the location of the same, that the same may call for, and a patent shall issue therefor; *provided*

*that said scrip shall in no instance be sold for a less amount than one dollar per acre.*

"This act to take effect and be in force from and after its passage."

"Approved February 23, 1853."

The italics are ours.

The provision of this section is clear, terse and unambiguous, and is not for that reason susceptible of construction. It states what it means and means what it says, namely: "That said scrip shall in no instance be sold for a less amount than one dollar per acre."

The clear purpose of this limitation upon the power of the county courts of the respective counties named was to prevent just what was here attempted to be done, that is, to fritter these lands away and thereby frustrate the twofold object the Legislature had in view at the time of its enactment, namely, the reclamation of the land for agricultural purposes and the procurement of funds for the use and benefit of the public schools of the State.

Now, if this statute may thus be violated, and these swamp lands of the State be disposed of for fifty cents on the dollar, then by parity of reasoning they may be disposed of for nothing, for there is no difference in principle between selling them for one-half of the price fixed by the statute and in disposing of them for nothing; the latter is simply double the length of the illegal step of the former, differing in degree, but not in principle.

The same principle of limitation upon the exercise of power by a court, was decided in the case of State ex rel. v. Williams, 221 Mo. 227. That was an original proceeding in prohibition, in Banc, seeking to prohibit Judge Williams of the circuit court of the city of St. Louis from further entertaining jurisdiction of a certain injunction suit then pending therein,

wherein the State of Missouri at the relation of See-bert G. Jones, circuit attorney of said city, was plain-tiff, and the Missouri Pacific Railway Company, and many others, were defendants. The facts of that case are not here material. Upon the presentation of the petition, duly verified by affidavit, said court, without requiring the plaintiff to give the bond required by section 3637, Revised Statutes 1899, but in plain viola-tion thereof, issued a temporary injunction against the defendants. The material parts of that statute read as follows:

"No injunction, unless on final hearing or judg-ment, shall issue in any case, except in suits instituted by the State in its own behalf, until the plaintiff, or some responsible person for him, shall have executed a bond with sufficient surety or sureties to the other party, in such sum as the court or judge shall deem sufficient."

While the court was divided as to whether or not that suit was a "suit instituted by the State in its own behalf" within the meaning of the statute, the majority holding that it was not, however, it was unan-imously of the opinion that in all other cases, except those stated in the exception, the court had no power or authority to issue an injunction therein unless the plaintiff or someone for him should first give the bond required by said statute, and consequently pro-hibited said court from further entertaining jurisdic-tion over said cause.

The limitation of the authority of the circuit court of the city of St. Louis to issue injunctions un-less the plaintiff first gives the bond required by said section 3637, is no more imperative and mandatory than is the limitation imposed upon the power of the county courts of the counties mentioned in said Act of February 23, 1853, to sell said lands for a sum not less than one dollar an acre.

And in the case of Cape Girardeau South Western Railway Co. v. Hatton, 102 Mo. 45, l. c. 55, this court in regard to these lands said:

"The swamp lands are the absolute property of the counties in which they are situate; but the counties' hold them for purposes designated in the law, and they must be sold for the purposes and in the manner pointed out by the law concerning swamp lands. [Sturgeon v. Hampton, 88 Mo. 211; State ex rel. Robbins v. County Court, 51 Mo. 84.] The county courts may cause the swamp lands to be sold, with or without drainage, at public or private sale; but they must be sold for not less than $1.25 per acre. [R. S. 1879, sec. 6153.] The proceeds are applied to purposes of reclamation, and the surplus, if any, goes to the school fund. [Sec. 6155.]"

These cases are direcetly in point and are controlling in this.

II. Moreover, and independent of the Williams case, if we have not correctly stated the plain meaning of section 3637, Revised Statutes 1899, and **Restricted Authority of County Courts.** sections 1 and 9 of the Act of February 23, 1853, then they have no meaning whatever, because no other construction can be placed upon them, except what they themselves plainly express, namely, that said lands shall not be sold for less than one dollar per acre.

But counsel for respondent cite us to the case of Simpson v. Stoddard County, 173 Mo. 421, and insist that it announces a doctrine contrary to that just stated. While it is true, there is some general language used therein which, read alone, might be construed to announce views different from those here expressed, yet a critical examination of the facts of that case will show that it was decided upon grounds radically different from those involved in this, and we might properly say that the language mentioned was

more *obiter* than authoritative, for the reason that it is disclosed by the record in that case that the sale and conveyance of the land therein considered were made after the passage of the Act of March 27, 1868 (Laws 1868, p. 68), and the Act of March 10, 1869 (Laws 1869, p. 66). These were the acts Fox, J., had in mind when he used the following language on page 448, in the Simpson case:

"The whole previous system of the State in regard to these lands was changed, by general law applicable to every county in the State by which a complete title was to be vested in each county by a patent to be issued for the swamp land therein situate, and thenceforth the State delegated to each county the execution of its trust as to the land situate in each county . . . and thereafter the swamp lands in said county were subject to sale and conveyance by the county under the provisions of the general law expressed in those acts."

But in the case at bar, the sale and conveyance were made prior to those enactments, and while an Act of March 1, 1855 (Laws 1854-5, pp. 154-159), entitled, "An Act in relation to swamp lands in the counties of New Madrid, Pemiscot, Mississippi, Scott, Cape Girardeau, Stoddard, Wayne, Ripley, Butler and Dunklin," was in full force and effect.

It cannot, therefore, be truly said as Judge Fox held in that case, that "the previous system of the State in regard to these lands was changed, by general law applicable to every county in the State." Nor does this act purport to repeal or amend the Acts of 1851 and 1853, previously mentioned (without it is done so by implication), although all of them relate to the same lands, their sale, reclamation, etc.

There appears to be some inconsistencies and incongruities existing between these various acts, which would take careful consideration to reconcile. Since, however, they are not specially material to the merits

·of this case, I will pass them by with the passing re-mark that I devoted much time and care to the Act of 1855 in the case of Mosher v. Bacon, 229 Mo. 338, and for that reason I will steer clear of everything con-tained in said acts, except such as bear directly upon the merits of the case at bar.

With these preliminary observations regarding the various acts mentioned, I will return to the sale and conveyance of the land involved in this suit, which as stated, were made prior to the passage of the Acts of 1868 and 1869, previously mentioned.

The exception of Butler county and the other nine mentioned in the Acts of 1851, 1853 and 1855, was car-ried forward, and was incorporated into section 19 of chapter 48 of the General Statutes of 1865. This, of course, renders said Acts of 1868 and 1869, wholly immaterial to the merits of this case.

We must, therefore, turn to the Act of 1855, and those of 1851 and 1853, to ascertain the validity of the deeds of conveyance involved in this case.

This court, in numerous cases, has repeatedly held, that the county courts of the respective counties of the State are not the general agents of the counties of the State. They are courts of limited jurisdictions, with powers well defined and limited by the laws of the State; and as has been well said, the statutes of the State constitute their warrant of authority, and when they act outside of and beyond their statutory authority, their acts are null and void.

Consequently, this court has also repeatedly held, that all persons while dealing with said courts or agents are bound to take notice of their powers and authority.

Among the cases so holding are the following: Sturgeon v. Hampton, 88 Mo. 203, l. c. 213; State ex rel. v. Crumb, 157 Mo. 545; Cape Girardeau South Western Railway Co. v. Hatton, supra; Wheeler v.

Reynolds Land Co., 193 Mo. 279; Moss v. Kauffman, 131 Mo. 424; Hooke v. Chitwood, 127 Mo. 372.

If we should apply the rule announced in these cases to the undisputed facts in the case at bar, which we must do, then the act of the county court of Butler county, acting through its commissioner, in selling the lands in controversy, for fifty cents an acre, was absolutely null and void, and the deed purporting to convey the same to John Bayless, respondents' ancestor, was likewise null and void, and conveyed no right, title or interest in or to the same to him, and consequently he had no interest therein to transmit under the statutes of descent and distribution to respondents, his heirs at law.

Counsel for respondents insist that this conclusion is also in contravention of the rule announced by this court in the case of Simpson v. Stoddard County, supra. This insistence is a misconception of that particular portion of that opinion.

In that case, our late beloved brother who wrote the opinion therein predicated the same upon the theory that because the invalidity of the consideration paid for the land there involved was not apparent upon the face of the deed or patent, the same should be and was held valid until set aside, for that reason, in a direct proceeding instituted by the county, in a court of competent jurisdiction for that purpose.

While I do not indorse that doctrine, and, if I correctly understand the later decisions of this court, which will be presently noted, neither does it, yet we are not forced to go to the extent of overruling that case upon this point, in order to hold the patent to John Bayless in this case invalid, for the simple reason that in this patent to Bayless the invalidity of the consideration paid for the land in controversy appears upon the face thereof, which fact, if the language of Judge Fox used in the Simpson case is followed, must of necessity require us to hold that this

patent is absolutely null and void upon its face, without the institution of any legal or equitable action or proceeding to have it so declared.

But speaking for myself, I am firmly of the opinion that such a sale of such lands is absolutely null and void, for want of authority in the county court to make the same, and that the appearance of or absence of the invalid consideration from the face of the patent is wholly immaterial, for in my opinion it is the want of authority, however proven, on the part of the county court to make such a sale, and not the mode by which that fact appears or is established, that renders the sale void.

This is true, for the reason, previously stated, that the county court being a public agent, exercising only statutory powers, all persons dealing with it must take notice of its acts, as well as the authority by which it so acts.

Besides that, in the Simpson case, the Act of 1854-5 (Laws 1854-5, p. 154), was entirely overlooked, for it is there said that prior to the Act of 1868 there was no limitation whatever upon the power of the county courts, as to the price at which these lands could be sold, at either private or public sale. This statement is contradicted by all the acts previously mentioned.

And in this connection we wish to add that there is some language used in the Simpson case, not supported by the acts and statutes mentioned, which is misleading, and creates much confusion therein.

It is there stated that the Act of February 28, 1855 (Laws 1854-5, p. 160), by which the several county courts of the State were "authorized to sell and dispose of the swamp and overflowed lands within their respective counties, either with or without draining and reclaiming the same, as in their discretion they might think conducive to the interests of said counties," applied to Stoddard and Butler counties. It is also there stated, that the Act of November 4, 1857

(Laws 1857, adj., 32), by which all the swamp lands situate in this State selected by virtue of the Act of Congress of September 28, 1850, were "declared to vest in full title, and belong to the counties in which they may lie," applied to Butler and Stoddard counties.

While the language of that act, if read and considered alone, is sufficiently broad and comprehensive to bear the construction there stated, yet when we consider the act, its history and its relation to other acts bearing upon the same subject, enacted about the same time, and some of them prior and others subsequent thereto, then we feel satisfied that the construction placed upon it by the majority of the court in the Simpson case was not the real intention of the Legislature or the real meaning of the act.

Briefly, there are several reasons for so saying.

In the first place, those acts were carried into the revision of 1865 (G. S. 1865, p. 277, et seq.); and section 19 of chapter 48 thereof provides that "the provisions of this *chapter* shall not extend to or be in force in the counties of Wayne, Butler, Stoddard, Dunklin, Pemiscot, New Madrid, Mississippi, Scott, Cape Girardeau and Ripley."

It is also manifest from the face of the acts themselves, that it was the intention not to amend the laws applicable to these ten counties, but to those counties only to which the original Act of March 3, 1851, was applicable. This is specially shown by reading the Laws of 1854-5, p. 160, and Laws 1857,adj., p. 32, which amend the law only in so far as it applied to the original lands embraced in the Act of 1851, Laws 1850-1, p. 238.

Also by inspecting these acts, it will be seen that the Act of 1854-5, p. 154, prescribing the mode and manner for selling the swamp lands in the ten counties named, was enacted subsequent to the two acts found on page 160 of the same Session Laws, regarding the

swamp land generally, thereby showing conclusively that the Legislature did not intend that the swamp lands in those counties should be governed by laws applicable to the swamp lands generally of the State.

Judge Fox makes no mention of the Act of 1854-5, p. 154, supra; evidently he overlooked it, and only considered the other acts of the Legislature which are general in terms applying to all swamp lands except these in these counties, and had it not been for the exception stated in that act, his conclusion would have been right; but having overlooked it, his conclusions were erroneous, in my opinion.

These views are in perfect harmony with those expressed by this court in the case of Wheeler v. Reynolds Land Co., 193 Mo. 279, where VALLIANT, J., in speaking for the court, on page 290, said:

"The plaintiff refers to Simpson v. Stoddard County, 173 Mo. l. c. 458-9, wherein it is said that a patent to swamp lands from the county, regular on its face and based on orders of the county court, is valid until set aside by appropriate proceedings; that: 'It is not absolutely void, but may be avoided in an action for that purpose, upon a showing of independent, unauthorized acts upon which the instrument is based.' And it is contended that that means that the patent is valid until it is set aside in a suit instituted by the county for that purpose. But that is not what the court said in that case, and is not what was meant. If that were the law, then a party who held a valid patent from the county could have no relief from another patent that may have been issued by the county which, though fair on its face, was founded on a false bottom, until the county itself might see fit to interfere. If the county had conveyed its title by another patent that was valid, it had no further interest in the land and unless the other patent contained some covenant or agreement, express or implied, which would render the county liable for a breach, the county

would have no such interest as would enable it to maintain a suit to set aside the alleged unauthorized patent. But whether the county could or could not sue, the party who held the valid title could sue to defend his own title or to put it at rest."

Further in the same case, VALLIANT, J., uses this language, l. c. 292:

"But where the common source was a public trustee who was authorized to sell only for a valuable consideration, yet, who, in disregard of the trust, essayed to convey the property as a mere gift, a party holding a deed from the trustee executed in good faith for a valuable consideration is entitled, in a suit in which the respective titles are the subject of adjudication, to show the total want of consideration in the deed of gift in order to have it adjudged invalid."

This language of Judge VALLIANT is specially applicable to the facts of this case, and for the reason there stated the Bayless patent in this case should be held void.

We, therefore, hold this patent to be void, and that it was ineffectual to convey any right, title or interest in and to the lands in controversy, to John Bayless, and, therefore, he had no interest therein, which respondents, his heirs, could have inherited.

III. Counsel for appellants urge two other objections to the validity of the patent from Butler county by Addy, the commissioner, to Bayless, the ancestor of respondents, and the person

**Swamp Lands: Title of County.**

through whom they claim title; first, because the record does not show any authority vested in the commissioner to make the patent; and, second, that at the time the patent was issued to Bayless, Butler county had no title to the lands therein described and purported to be conveyed thereby—that is, in its own right, as was held in the Simpson case,

but it did hold the title under the Act of 1853 "upon the terms and provisions, as therein stated."

The decision of the first objection urged is not necessary for a proper determination of the case, but if it were, it seems to me, from the limited light I have upon the question, that if valid, it would cut much deeper than the point suggested by counsel for appellants. In fact, it would penetrate the vitals of appellants' own case, for as I understand this record, they claim under a patent issued by the same commissioner, and that too, without any additional showing of authority upon his part, to issue the same.

But we will not decide that question, because as previously stated, it is not necessary, and for the further reason that it has not been fully and clearly presented.

Attending the second objection:

If what we have stated and held the law to be in paragraph two of this opinion is correct, then this objection must of necessity be sustained, because, if it is true, as there held, namely, that the Acts of 1854-5, p. 160, and 1857, adj., p. 32, did not apply to the ten counties named in the Act of 1851, Laws 1850-1, pages 238 to 240, Butler county being one of them, then clearly that county had no title of its own to said land, on November 15, 1867, at the date of the patent by Addy to Bayless, and never acquired title thereto until the passage of the Act of March 27, 1868 (Laws 1868, p. 68), supra.

Following the ruling announced in the previous paragraph, we hold that the patent from Butler county by Addy, commissioner, purporting to convey this land to Bayless, conveyed no right, title or interest whatever in or to the land described therein to John Bayless, the ancestor of respondents, and through whom they claim title to this land by inheritance; also that respondents have no interest or title in or to said land of any character.

IV.  The conclusions reached and announced in the previous paragraphs of this opinion fully dispose of all the questions regarding the first count of the petition; and having there held that the respondents have no right, title or interest in or to the lands in controversy, it necessarily follows therefrom that they were not entitled to the possession of the land or to the judgment awarding it to them; and for that and for the other reasons stated, we reverse the judgment of the circuit court as to both counts of the petition.

*Lamm, J.,* concurs, except as to what is said regarding the Simpson case; *Bond, J.,* concurs; *Graves, J.,* concurs in result.